MARTIN L. EHRGOTT, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

The same duties and liabilities as to streets in the territory annexed to the city of New York by the act of 1873 (Chap. 613, Laws of 1873, amended by chap. 329, Laws of 1874) is imposed upon the city, as rest upon it, in reference to the streets in its original territory.

The provision of said act (§ 14) giving to the commissioners of the department of public parks exclusive power to lay out, and exclusive control of, the streets in the annexed territory does not mean exclusive of the city. but exclusive of any other officers of the city; and said commissioners in the exercise of such powers act as agents for the municipality, their duties being regulated by statute (Chaps. 335 and 737, Laws of 1873; chap. 300, Laws of 1874; chap. 363, Laws of 1859; chap. 275, Laws of 1864; chaps. 564 and 565, Laws of 1865; chaps. 367 and 757, Laws of 1866; chaps. 580 and 697, Laws of 1867.)

To determine whether there is municipal responsibility for *misfeasance* or *nonfeasance* the question is whether the department whose acts or omissions are complained of is a part of the machinery for carrying

on the municipal government, and whether it was at the time engaged in the discharge of, or charged with, a duty primarily resting upon the municipality.

Accordingly *held*, that the city was liable for damages resulting from injuries caused by a defect in a street in the territory so annexed.

*Maxmilian* v. *Mayor, etc.* (62 N. Y. 160), *Ham* v. *Mayor, etc.* (70 id. 459), *N. Y. & B. S. M. & L. Co.* v. *City of B.* (71 id. 580), distinguished.

In an action to recover damages for injuries so sustained, it appeared that plaintiff was a canvasser for a book publishing house, receiving for his services a certain percentage on the sales made by him, and that he was disabled by his injuries from pursuing his business. He was allowed to testify, under objection, to the amount of his annual earnings, for six or seven years prior to the accident. *Held* no error.

*Masterton* v. *Village of M. V.* (58 N. Y. 391), distinguished.

Plaintiff's complaint alleged substantially that, because of the accident, caused by the defect complained of, he suffered great bodily injury, that he became and still continues to be sick, sore and disabled, was prevented for a long time from attending to his business, and was otherwise greatly injured. Upon the trial plaintiff was allowed to prove that he had a permanent disease of the spine, resulting from his injuries; this was objected to on the ground that such a result had not been set forth in the complaint. *Held*, that the objection was properly overruled ; that, if defendant desired the complaint to be more definite, he should have moved to have it made so, or for a bill of particulars.

The defect complained of was a ditch in the street, into which plaintiff drove on a rainy night, the axle of his carriage was broken, and he was dragged over the dash board ; he procured another carriage to which he harnessed his horses and drove several miles to his home. During this time he was exposed to the cold and rain. Upon the trial plaintiff's evidence tended to show that the diseases from which he was suffering were the result of the strain and shock. Defendant's evidence tended to show that they were the result of the subsequent exposure. The court charged in substance that defendant was only liable for such damages as were the natural and necessary result of the accident ; that whether the injuries resulted from the strain, or the exposure, even if solely the result of the latter, defendant was liable, providing the jury find that plaintiff was without fault or negligence. *Held* no error ; that the exposure was the direct and proximate result of the accident.

*Hobbs* v. *L. & S. W. R. Co.* (L. R., 10 Q. B. 111), *McMahon* v. *Field* (44 L. T. N. S. [Ch. Div.], 175), *Waller* v. *M., etc., R. Co.* (12 Ir. L. T. 145), *P. P. C. Co.* v. *Barker* (4 Col. 344), *I., etc., R. Co.* v. *Birney* (71 Ill. 391), *Francis* v. *St. L. T. Co.* (5 Mo. App. 7), disapproved.

The jury in answer to questions submitted to them found in substance that the diseases from which plaintiff suffered were the direct result, both of the accident and the subsequent exposure, that the effect of the exposure was simply to increase and aggravate the injury received from the acci-

dent, and that the plaintiff's conduct in so exposing himself was reasonable and prudent. *Held,* that even if the charge was erroneous the error was harmless.

The court refused to charge that defendant was only liable for such damages as might reasonably be supposed to have been in the contemplation of the parties as the probable result of the accident. *Held* no error.

.(Argued May 9, 1884; decided June 10, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made December 17, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and granted a new trial.

The nature of the action and the material facts are stated in the opinion.

*De Lancey Nicoll* for appellant. The corporation of the city of New York is charged with the duty of keeping its streets and avenues which are open to public travel in such repair that they may be safely traveled, and where it neglects such duty it is liable for injuries sustained through such negligence. (*Mayor, etc.,* v. *Furze,* 3 Hill, 612; *Rochester White Lead Co.* v. *City of Rochester,* 3 Comst. 464; *Hutson* v. *Mayor, etc.,* 5 Seld. 163; *Henly* v. *Mayor, etc.,* 1 Bing. N. C. 212; *Conrad* v. *Trustees, etc.,* 16 N. Y. 158; Charters 1686, 1708, 1730, amended by charter of 1830, charters of 1857, 1870, 1873; *Mayor, etc.,* v. *Turner,* 1 Cowp. 86; *Payne* v. *Partridge,* 1 Shower, 256; Cooley on Const. Lim. 247, 248; *Barnes* v. *District of Columbia,* 91 U. S. 540; Dill. on Mun. Corp. [3d ed.], §§ 967, 1046; *West* v. *Trustees, etc.,* 16 N. Y. 161, note; *Lee* v. *Village of Sandy Hill,* 40 id. 442; *Storrs* v. *Utica,* 17 id. 104; *Requa* v. *Rochester,* 45 id. 129.) The commissioners of the department of public parks in the city of New York are not independent public officers, but constitute a subordinate department of the city government, and when engaged in the performance of corporate duties are the agents of the corporation, for whose negligence it is liable. (Dill. on Mun. Corp. [3d ed.], § 974; *Mayor, etc.,* v. *Bailey,* 3 Hill, 538; 2 Den. 433; *Conrad* v. *Trustees, etc.,* 16 N. Y. 158 and note; *Maxmillian*

v. *Mayor, etc.,* 62 id. 160; *Barnes* v. *Dist. of Columbia,* 91 U. S. 540.) The duty of keeping all the streets in repair is a corporate duty in which the city corporation has a private interest, and from which it derives special benefit and advantage. (*Mayor, etc.,* v. *Furze,* 3 Hill, 612; *Conrad* v. *Trustees, etc.,* 16 N. Y. 158; *Maxmillian* v. *Mayor, etc.,* 62 id. 160; *N. Y. & B'klyn Saw-Mill Co.* v. *B'klyn,* 71 id. 580; *Appleton* v. *Water Comm'rs,* 2 Hill, 433; *Ham* v. *Mayor, etc.,* 70 N. Y. 457; *Tone* v. *Mayor, etc.,* id. 157; *Russell* v. *Mayor, etc.,* 2 Denio, 461; *Martin* v. *Mayor, etc.,* 1 Hill, 545; 91 U. S. 540; *Swift* v. *Mayor, etc.,* 83 N. Y. 528.) The damages sustained by plaintiff were the proximate, natural and probable result of the defendant's negligence. (*Lowery* v. *W. U. Tel. Co.,* 60 N. Y. 198; *Eter* v. *Luyster,* id. 252; *Jutte* v. *Hughes,* 67 id. 267; *Williams* v. *Vanderbilt,* 28 id. 217; *Mil. R. R. Co.* v. *Kellogg,* 4 Otto, 469; *Derry* v. *Flitner,* 118 Mass. 131; *Westfield* v. *Mayor,* 122 id. 100; Wood's Mayne on Damages, 66, §§ 52,53; 1 Sedg. on Meas. of Dam. [7th ed.] 129, note *b;* 2 id. 362, note *bc.*) All plaintiff's conduct after the accident was free from negligence. )Sherman on Neg. [3d ed.] 37, § 31; 2 Thompson on Neg. 1149; *Willis* v. *L. I. R. R. Co.,* 32 Barb. 398; 34 N. Y. 670; *Johnson* v. *Belden,* 2 Lans. 433; *Filer* v. *N. Y. C. R. R. Co.,* 49 N. Y. 47.) On conflicting evidence whether defendant's negligence is the proximate cause of the plaintiff's injuries, it is a question for the jury. (*Mil. R. R. Co.* v. *Kellogg,* 4 Otto, 469; *Penn. R. R. Co.* v. *Hope,* 80 Penn. St. 373; *Webb* v. *R. W. & O. R. R. Co.,* 49 N. Y. 420; *Derry* v. *Flitner,* 118 Mass. 131; *Gilman* v. *Noyes,* 57 N. H. 627.) Where there is no conflict of fact, it is a question of law. (*Hourd* v. *R. R. Co.,* 85 Penn. St. 293.) If plaintiff's damages arose from his exposure after the accident, and not from the strain of his fall, plaintiff being free from negligence in so exposing himself, such damages are simply the natural and probable result of defendant's negligence. (Sutherl. on Dam. 230; 4 Otto, 469, 475; 60 N. Y. 202; 49 id. 420; *McCoun* v. *N. Y. C. R. R. Co.,* 66 Barb. 338; *Penn. R. R. Co.* v. *Hope,* 80 Penn. St. 373; 60 N. Y. 252; *Derry* v. *Flitner,*

118 Mass. 131; *Williams* v. *Vanderbilt*, 28 N. Y. 217; *Pullman P. C. Co.* v. *Barker*, 4 Col. 344; 3 Am. Rep. 89; *Ind., etc., R. R. Co.* v. *Birney*, 71 Ill. 391; *Francis* v. *St. L. Transfer Co.*, 5 Mo. App. 7; *McMahon* v. *Fired*, 44 L. T. 175; *Brown* v. *C. M. & St. P. R. R. Co.*, 54 Wis. 342.) Where a plaintiff has received a fixed compensation for his services, or his earnings can be shown with reasonable certainty, proof of past profits is competent. (*McIntyre* v. *N. Y. C. & H. R. R. R. Co.*, 37 N. Y. 287; *Grant* v. *City of Brooklyn*, 41 Barb. 381; *Walker* v. *Erie R. R. Co.*, 63 id. 260; *Masterton* v. *Village of Mt. Vernon*, 58 N. Y. 371; *Wade* v. *Leroy*, 20 How. 43; *Nebraska City* v. *Campbell*, 2 Blackst. 590; *Nash* v. *Sharpe*, 19 Hun, 366; *Keisell* v. *Butler*, 53 N. Y. 612; *Phillips* v. *L. & S. W. R. R. Co.*, 49 L. J. C. L. 233.) Damages from bodily pain and suffering need not be specially alleged. (*Curtis* v. *Roch. & Syr. R. R. Co.*, 18 N. Y. 534; 20 Barb. 282; *Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 42; *Argotsinger* v. *Vines*, 82 id. 308.) Notice to the police of the defect in the street was notice to the city. (*Rehberg* v. *Mayor, etc.*, 91 N. Y. 137.)

*D. J. Dean* for respondent. The duty of maintaining the street in question, not having been charged upon the mayor, aldermen and commonwealth of the city of New York, it is not liable. (Laws of 1874, chap. 329, §§ 11, 14; Laws of 1857, chap. 771; Laws of 1859, chap. 349; Laws of 1860, chap. 150; Laws of 1861, chap. 88; Laws of 1864, chap. 275; Laws of 1865, chaps. 564, 565; Laws of 1866, chaps. 367, 757; Laws of 1867, chaps. 580, 697; Laws of 1870, chap. 137, §§ 95, 96; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 162, 166; *Ham* v. *Mayor, etc.*, 70 id. 459, 463, 464; Dillon on Mun. Corp. [3d ed.] 1036, § 1017; id. 977, § 974; *N. Y. & B. S. M. Co.* v. *City of Brooklyn*, 71 N. Y. 580; *Greer* v. *Mayor, etc.*, 60 id. 303; *Martin* v. *Mayor, etc.*, 1 Hill, 545; *Lorillard* v. *Town of Monroe*, 11 N. Y. 392–396; *Bailey* v. *Mayor, etc.*, 2 Den. 433; *Russell* v. *Mayor, etc.*, id. 473–481; *Hafford* v. *City of New Bedford*, 82 Mass. 297; *Fisher* v. *Boston*, 104 id. 87; *Walcott*

r. *Swampcott*, 83 id. 101; *Buttrick* v. *Lowell*, id. 172; *Terry* v. *Mayor, etc.*, 8 Bosw. 504; *O'Meara* v. *Mayor, etc.*, 1 Daly, 425; *Kelly* v. *Mayor, etc.*, 11 N. Y. 432; *Pack* v. *Mayor, etc.*, 8 id. 222.) The legislature may confer power upon independent public agencies to be exercised within the limits of a municipality independent of control by it. (*People, ex rel. Bronson,* v. *Walsh,* 36 Am. Rep. 135; Dillon on Mun. Corp., § 527.) The commissioners of parks are individually liable for neglect of duty in respect to the performance of the executive powers devolved upon them in relation to the maintenance of streets. (*Bennett* v. *Whitney,* 94 N. Y. 302; *Hover* v. *Barkhoff,* 44 id. 113; *Robinson* v. *Chamberlain,* 34 id. 389; *Adsit* v. *Brady,* 4 Hill, 630; *Fulton F. Ins. Co.* v. *Baldwin,* 37 N. Y. 648; S. & R. on Neg. 198.) There can be but one superior responsible at the same time in relation to the same transaction. (*Maxmilian* v. *Mayor, etc.*, 62 N. Y. 163; *Laugher* v. *Pointer,* 5 B. & C. 560; *Hobbil* v. *L. & N. W. R. R. Co.*, 4 Wel. H. & G. Exch. 253; *Pack* v. *Mayor, etc.*, 8 N. Y. 22.) At common law a municipal corporation is not liable in a private action for neglect of duty in caring for the public streets, as such duty is purely governmental and is not performed for the emolument of the corporation. (*Hill* v. *Boston,* 122 Mass. 344; *Russell* v. *Men of Devon,* 2 T. R. 667, 673; *Mower* v. *Leicester,* 9 Mass. 247, 250; *Bartlett* v. *Crozier,* 17 Johns. 439; *Morey* v. *Newfane,* 8 Barb. 645; *Gibson* v. *Mayor, etc.*, 5 Q. B. 218, 223; *Mersey Docks* v. *Gibbs,* 11 H. L. Cas. 686; *Mayor, etc.,* v. *Furze,* 3 Hill, 612; *Maxmilian* v. *Mayor, etc.,* 62 N. Y. 162; *Ham* v. *Mayor, etc.,* 70 id. 459; *Smith* v. *Rochester,* 76 id. 506; *Hutson* v. *Mayor, etc.,* 5 Sandf. 305; Dillon on Mun. Corp. [2d ed.] 967, 1045.) In an action to recover damages for personal injuries which prevent plaintiff from transacting his accustomed business, where the business is of such a nature that the profits therein are uncertain, proof of his past profits is incompetent. (*Masterton* v. *Village of Mt. Vernon,* 58 N. Y. 391, 396; *Beerback* v. *Goodyear R. Co.,* 11 N. W. R. 514; Index Reporter, 4254.) Special damages — which although the natural are

not the necessary result of the act complained of, and are not implied in law, must be particularly stated in the complaint to prevent surprise. (1 Chit. Pl. [14th Am. ed.] 338, 396; 2 Greenl. Ev., § 254; *Armstrong* v. *Percy*, 5 Wend. 538; *Squier* v. *Gould*, 14 id. 159; *Tooker* v. *Arnoux*, 76 N. Y. 387.) The law cannot separate the damage directly caused by the accident from that caused by plaintiff's unnecessary and negligent exposure to the cold and rain, and therefore no recovery can be had. (2 Sedg. on Dam. [7th ed.] 358; *Brand* v. *Sche. R. R. Co.*, 8 Barb. 360; *Jenks* v. *Wilbraham*, 11 Gray, 142; *Butterfield* v. *Forester*, 11 East, 60; 2 Thompson on Neg. 1091, 1151; *Flower* v. *Adam*, 3 Taunt. 314; *Robinson* v. *West. Pac. R. R. Co.*, 48 Cal. 409; *Hearne* v. *So. Pac. R. R. Co.*, 50 id. 482; *Hogle* v. *Cent. R. R. Co.*, 28 Hun, 363; 1 Sedg. on Meas. of Dam. [7th ed.] 34; 2 id. 315, 317; *L. V. R. Co.* v. *McKeen*, 35 Am. Rep. 644; *Krow* v. *Schoonmaker*, 3 Barb. 647–650.) This is not a case for exemplary damages; the causes were too remote. (*R. Co.* v. *Kerr*, 62 Penn. St. 1353; 35 Am. Rep. 648; *Hobbs* v. *London, etc., R. Co.*, L. R., 10 Q. B. 111; *McMahon* v. *Field*, Ch. Div., 44 L. T. [N. S.] 175; *Waller* v. *M. G. W. of I. R. Co.*, 12 Irish L. T. 145; 4 Cal. 344.) In tort, as in contract, the rule as to damages is alike. (*Baker* v. *Drake*, 53 N. Y. 216; 1 Sedg. 217, note *a*; *Masterson* v. *Mayor, etc.*, 7 Hill, 612; *Blanchard* v. *Ely*, 21 Wend. 342; *Griffin* v. *Colver*, 16 N. Y. 489, 493; *Baldwin* v. *U. S. Tel. Co.*, 45 id. 744; *Booth* v. *Spuyten Duyvil Rolling Mill Co.*, 60 id. 487; *Magnin* v. *Dinsmore*, 62 id. 35; *Devlin* v. *Moore*, 63 id. 8; *Hexter* v. *Knox*, id. 561; *Rice* v. *Marley*, 66 id. 82; *Wehle* v. *Haviland*, 69 id. 448.) The damages are limited to those within the actual or implied contemplation of the parties. (2 Sedg. 315; *Lowery* v. *W. U. Tel. Co.*, 60 N. Y. 198; *The Squib Case*, 2 W. Blackst. 892; *Negro Boy Case*, 4 Denio, 364; Mayne on Damages, 40; *Crain* v. *Petrie*, 6 Hill, 522; *Vicar* v. *Wilcox*, 8 East, 1; *Knight* v. *Gibbs*, 1 A. & E. 43.)

Earl, J. This action was commenced to recover damages sustained by the plaintiff from personal injuries received by him in consequence of a defect in a street in the city of New York. He recovered a verdict of $25,000, but his judgment was reversed at the General Term, and then he appealed to this court.

The reversal of the General Term, as appears by its opinion, was upon the sole ground that the duty of repairing the street, at the place of the accident, was by law devolved upon the park department and not upon the city. But the learned counsel for the city, in his argument before us, also made other objections to the recovery which must be considered.

(1.) It is settled by a long line of decisions in this State, that municipal corporations proper, having the powers ordinarily conferred upon them respecting streets within their limits, owe to the public the duty to keep them in a safe condition for use in the usual mode by travelers, and are liable in a civil action for special injury resulting from neglect to perform this duty (*Mayor, etc., v. Furze*, 3 Hill, 612; *Conrad* v. *Trustees of Ithaca*, 16 N. Y. 158; *Requa* v. *City of Rochester*, 45 id. 129; *Barnes* v. *District of Columbia*, 91 U. S. 540); and the rule has been applied against the city of New York in many cases. (*Hutson* v. *Mayor, etc.*, 9 N. Y. 163; *Davenport* v. *Ruckman*, 37 id. 568; *Hume* v. *Mayor, etc.*, 74 id. 264.) While this rule of liability has been somewhat criticised, we believe that it has the sanction of a wise public policy, the support of good reasons, and that its operation is generally just and beneficent.

Therefore, if this accident had happened in any of the streets in the southerly part of the city, its liability could not be questioned. But it happened on the northerly side of the Harlem river, in the district annexed to the city by the act chapter 613 of the Laws of 1873, as amended by chapter 329 of the Laws of 1874. By the first section of the act the territory mentioned, with the inhabitants and estates therein, is "set off from the county of Westchester, and annexed to, merged in and made a part of the city and county of New York, subject to the

same laws, ordinances, regulations, obligations and liabilities, and entitled to the same rights, privileges, franchises and immunities in every respect, and to the same extent as if such territory had been included within said city and county of New York, at the time of the grant and adoption of the first charter and organization thereof, and had so remained up to the passage" of the act. Section 11 provides that the mayor and common council of the city of New York, and other city officers, " shall exercise the same powers and shall perform the same duties in and over the territory hereby annexed, and in each ward thereof, in like manner and to the same extent as if said territory had always been a part of the city and county of New York, except as the same may be specially limited, excepted or extended by this act." These provisions, unless limited in the act, are sufficient to impose upon the city the same duties and liabilities as to the streets in the annexed territory, as rest upon it in reference to the streets in the original territory of the city. But the claim is that the operation of section 14 is such as to exempt the city from any responsibility for the streets in the annexed territory. That section provides that " the commissioners of the department of public parks of the city of New York shall have the exclusive power to locate and lay out, construct and maintain all public parks, streets, roads and avenues, and to devise plans for and to locate all bridges and tunnels, and shall have exclusive control of the maintenance and construction of all public parks within the territory hereby annexed, and to construct and maintain all bridges, tunnels, sewers, streets, roads and avenues so laid out."

The exclusive control here given to the park commissioners is not exclusive of the city, but exclusive of any other officers of the city. It is the duty of the city to keep its streets in repair, and that duty as to all the streets in the annexed territory is devolved upon the park commissioners. It is a duty which they discharge, not for themselves, not for the public generally, but for the city. The duty is not taken away from the city. It is still bound to discharge the duty, and

the park commissioners are the agency through which it discharges it.   The city must act through officers and agents, and it is for the legislature to determine what powers and duties shall be devolved upon them.   It matters not how ample or exclusive their powers may be, nor how independently they may act, nor how they are chosen.   If they are provided by law, and authorized to discharge a corporate duty which rests upon the municipality, then in the discharge of that duty they represent the municipality, and it may be chargeable with their *misfeasance* and *nonfeasance.*   The exclusive control of the streets might by law be confided to the mayor or to the street commissioner, free from the control of the common council, and yet the care of the streets would remain a municipal duty discharged by the officer designated for and on behalf of the city.

But the park commissioners are not independent public officers; their duties are regulated by the acts constituting the charter of the city.  (Chaps. 335 and 757 of the Laws of 1873, and chap. 300 of the Laws of 1874.)   The department of public parks is one of the city departments, and the commissioners are appointed by the mayor, and by him may be removed. They have from time to time, by various acts of the legislature, been clothed with power to open, lay out and control streets in the city, south of the Harlem river.   (Chapter 363 of 1859 ; chap. 275 of 1864; chaps. 564, 565 of 1865; chaps. 367 and 757 of 1866; chaps. 580 and 697 of 1867, and sec. 83 of the charter act of 1873.)   And in the discharge of the duties thus conferred upon them, it cannot be doubted that they acted for, and represented the city, just as the department of public works would have represented the city if the duties had been devolved upon it.

To determine whether there is municipal responsibility, the inquiry must be, whether the department whose *misfeasance* or *nonfeasance* is complained of, is a part of the machinery for carrying on the municipal government, and whether it was at the time engaged in the discharge of a duty, or charged with a duty primarily resting upon the municipality.   For these

views, the cases of *Mayor, etc.*, v. *Bailey* (3 Hill, 538 ; *S. C.*, 2 Denio, 433), and *Barnes* v. *District of Columbia* (*supra*), are ample authority, and the case of *Richards* v. *Mayor, etc.* (16 Jones & Sp. 315) is a precise authority.

The learned counsel for the city, however, calls our attention to, and mainly relies upon, the following authorities: *Maxmilian* v. *Mayor, etc.* (62 N. Y. 160), *Ham* v. *Mayor, etc.* (70 id. 459), *N. Y. & B. S. M. & L. Co.* v. *City of Brooklyn* (71 id. 580). But none of these cases are in point. In *Maxmilian* v. *Mayor, etc.*, it was sought to make the city liable for the negligence of an employe of the commissioners of public charities ; but the plaintiff was defeated on the ground that the commissioners and their employes were not engaged in the discharge of any duty which rested upon the city. In that case FOLGER, J., writing the opinion, said : "The duty of keeping in repair streets, bridges and other common ways of passage, and sewers, and a liability for a neglect to perform that duty rests upon an express or implied acceptance of the power, and an agreement so to do. It is a duty with which the city is charged for its own corporate benefit, to be performed by its own agents, as its own corporate act." In *Ham* v. *Mayor, etc.*, it was sought to make the city liable for the negligence, or unskillfulness of servants employed by the department of public instruction ; and the plaintiff was defeated upon the ground that the department was not engaged in the discharge of a corporate duty. Referring to these two cases, in *Swift* v. *Mayor, etc.* (83 N. Y. 528), RAPALLO, J., said : "These were actions for damages resulting from negligence, and it was held, that as the persons guilty of the negligence were not the servants of the corporation, not being either employed or removable by it, or engaged in the performane of any corporate duty, the city was not liable for their negligence." In the case of *N. Y. & B. S. M. & L. Co.* v. *City of Brooklyn*, an act of the legislature made it the duty of the common council of the city to repair and rebuild certain docks at the expense of the city, and an action was brought to recover damages suffered by the plaintiff from a neglect of the duty. It was held that the city

was not liable, because the duty was not a corporate duty, and this rule was laid down: A municipal corporation is not liable for the acts or omissions of an officer, elected or appointed by it, in respect to a duty specifically imposed upon the officer, which is not connected with his duties as agent of the corporation, and in which it has no private interest. It is only liable for the acts or omissions of officers in the performance of duties imposed upon the corporation. CHURCH, Ch. J., writing the opinion, said: "The general rule may be stated to be, that a municipal corporation is only liable for the acts or omissions of officers in the performance of duties imposed upon the principal."

We, therefore, conclude that the streets in the annexed territory are streets of the city which it is bound to maintain and keep in repair, and that although in the distribution of the powers to be exercised by the city among its various officers, this duty is to be exclusively performed by the park commissioners, yet it is a duty which they perform for it, and it remains responsible for the condition of its streets.

(2.) The plaintiff was at and prior to the accident, a salesman or canvasser, for the publishing house of D. Appleton & Co. Instead of being employed at a fixed salary he had a contract with them, by which he received for his services a certain percentage of the selling price of every copy of Appleton's Cyclopedia sold in the district embracing New York city, Brooklyn, Long Island, Staten Island and Westchester county. He was permitted to prove, against the objections of defendant's counsel, that his earnings under his contract, for six or seven years prior to the accident, were from $4,000 to $7,000 a year. It is now claimed that this proof was erroneously allowed. The plaintiff had the right to recover for his bodily sufferings, and for his pecuniary loss caused by his inability to work or to follow his usual vocation. It would be quite difficult, if not impossible, to place before the jury the extent of the pecuniary loss, unless a plaintiff in such a case could show how much he had been earning, and was capable of earning, in his usual vocation. In the case of a lawyer, if informed merely of the

number of days he worked in a year, or of the number of clients he had, or of the number of cases he tried and argued; and in the case of a physician or dentist, if informed merely of the number of his patients, a jury would get a very inadequate idea of his earnings. It is certainly much better in such cases to place before the jury the amount earned by the person in his profession during a series of years before the injury. That amount may vary in the past, and looking to the future, must be uncertain, and yet the proof will furnish to the jury the best possible basis to estimate the pecuniary loss. So here the plaintiff's income was not from capital invested, but solely from his personal skill and services; and his earnings for the six or seven years showed what his services were worth to himself, and what he was capable of earning, and thus gave the jury a basis from which to estimate his pecuniary loss. It would have aided the jury but very little to place before them the nature of his business, and the number of volumes of the cyclopedia sold. The question was how much did he earn, and how much was he capable of earning; and proof which would furnish answers to these questions would enable the jury to determine how much he had lost from his inability to continue his vocation. There is abundant authority to justify the reception of this evidence. (*Grant* v. *City of Brooklyn*, 41 Barb. 381; *Walker* v. *Erie R. Co.*, 63 id. 260; *Nash* v. *Sharpe*, 19 Hun, 366; *McIntyre* v. *N. Y. C. R. R. Co.*, 37 N. Y. 287; *Kessel* v. *Butler*, 53 id. 612; *Wade* v. *LeRoy*, 20 How. [U. S.] 343; *Nebraska City* v. *Campbell*, 2 Black, 590; *Phillips* v. *South-Western Railway Co.*, L. R., 4 Q. B. Div. 406.)

The *Case of Masterton* v. *Village of Mount Vernon* (58 N. Y. 391), mainly relied on by counsel for the city, is not in point. There the plaintiff had testified that he was engaged in the tea importing and jobbing business, buying and selling teas, and had been for a great number of years; that he had a partner who attended to the sales while he made the purchases; that in purchasing teas a high degree of skill was necessary which he possessed; that the business was extensive; that in consequence of the injury he could not purchase

teas, and there was a great falling off in the business of the firm. He was then asked: "About what had been your profits, year by year, in that business?" And against the objection of the defendant he was permitted to answer; and it was held that those profits depended upon too many contingencies, and were altogether too uncertain to furnish any safe guide in fixing the amount of damages, and that the evidence was, therefore, incompetent. There the profits resulted, both from capital and services, and the services were rendered both by the plaintiff and his partner; and hence it could not be known how much of the profits were due alone to the plaintiff's skill and services. It was under such circumstances that it was held that the profits depending upon all the contingencies of trade and commerce, of wind and water, were too uncertain as a guide for the jury. In that case GROVER, J., writing the opinion, however, said: "Where in such a case the plaintiff has received a fixed compensation for his services, or his earnings can be shown with reasonable certainty, the proof is competent." Here plaintiff's earnings were shown with reasonable certainty, and no error was committed in allowing them to be proved.

(3.) Upon the trial plaintiff gave evidence tending to show that he had a disease of the spine of a permanent nature as the result of his injuries. This evidence was objected to by the counsel for the city, on the ground that the plaintiff had not alleged such a result from the injury in his complaint. We think the complaint is sufficient. It alleges that he suffered great bodily injury; that he became, and still continues to be, sick, sore and disabled; that he was obliged to spend large sums in attempting to cure himself, and was prevented for a long time from attending to his business, and that he was otherwise injured to his damage $25,000. These allegations are sufficient to authorize proof of any bodily injury resulting from the accident, and if the defendant desired that they should be more definite, it could have moved to have them made more specific, or for a bill of particulars.

(4.) The accident occurred in the night time, while it was raining. When the plaintiff drove into the ditch in the street his horses jumped, the axle of his carriage was broken, and he was dragged partly over the dash-board. With the assistance of men who came to his help, his horses were taken from the carriage, and he procured another carriage and harnessed his horses to that, and drove several miles to his home with his wife, sister and son. To report the accident to the police station near by, to change carriages and drive to his home, took several hours, and during that time he was exposed to the cold and rain, and his clothes became perfectly saturated with water. He was not that night aware that he had sustained any injury, and the next morning first became sensible of the pain in his back. Upon the trial the plaintiff gave evidence tending to show that the diseases from which he was suffering were results of the strain and shock, caused by his being dragged over the dash-board ; and the defendant gave evidence tending to show that the diseases were the result of the subsequent exposure to the cold and rain. The judge, in his charge to the jury, left it to them to determine whether the injuries of which plaintiff complained were the proximate, direct result of the accident, and upon plaintiff's request he charged " that whether his personal injuries resulted from the strain experienced by him in being pulled over the dash-board, or from the exposure after the accident, the defendant is still responsible for the injuries from which the plaintiff is now suffering," provided that the jury shall find that the plaintiff was without negligence, and conducted himself with ordinary and reasonable care." To this charge defendant's counsel excepted. The judge also charged, at the request of the defendant, that " the inquiry is whether the plaintiff's conduct has augmented the mischief ; if so, as the law is inadequate to apportion the wrong, there can be no recovery ; " that " no punitive damages can be recovered against the city in this action ; if the plaintiff is entitled to recover at all, the jury can only award compensation for such actual pecuniary loss, and pain, and suffering as were occasioned by the accident ; " that " the plaintiff was

bound to use ordinary prudence to avoid ill effects from the accident as well before as after the accident, and if the exposure to the rain and wet after the break-down occasioned the present injuries to the spine, and such exposure was not the conduct and action of a prudent man, especially in view of his ill-health, arising from his throat, then the defendant would not be responsible for it;" that " the defendant is only liable for such damages as are the natural and necessary result of the accident in question; " and he refused to charge as a part of this request, " and for such damages as might reasonably be supposed to have been in the contemplation of plaintiff and defendant, as the probable result of the accident," and to this refusal defendant's counsel excepted. He also charged the following request of the defendant: "If you find that the defendant is not responsible for the plaintiff's present sufferings, within the rules which I have just laid down, and yet find that the accident was the result of the defendant's negligence, the plaintiff would be entitled to recover for such pain and suffering as the evidence shows to be the natural and necessary result of the accident; " and he refused to charge the following requests of the defendant: " Or if you believe that such spinal sufferings, from which the plaintiff suffers, arose from the plaintiff's standing out in the cold and rain for an hour, or an hour and a half, after the breakdown, during which time the plaintiff says he got wet to the skin, or arose from his catching cold by riding home in his wet clothes, and if you believe that it was not occasioned directly by the rut in the road, but that it was the result of the plaintiff's own voluntary exposure, then I charge you that the city would not be liable therefor; " that " if the plaintiff's personal sufferings were occasioned by his getting wet to the skin, from standing out doors, and then driving home in his wet clothes, on the night in question, then I charge you that the defendant would not be liable for them." To these refusals defendant's counsel excepted.

The defendant also requested the judge to charge " that the spinal injuries from which the plaintiff now suffers, if they were occasioned by the exposure to the wet, following the accident,

as the defendant contends they were, are not the natural and necessary result of the accident, and are not such as might reasonably be supposed to have been in the contemplation of the parties as the probable outgrowth of the accident, and, therefore, in the contemplation of the law, the defendant is not liable therefor." The judge declined to charge this, except as he had already charged, and the defendant's counsel excepted.

The judge submitted written questions to the jury, which they answered as follows: *First.* "Are the spinal difficulties, from which the plaintiff is now suffering, the direct result of the accident — that is, the breaking of the axle, and his falling over the dash-board — or are they the result of his subsequent exposure to the wet or cold, or both?" Answer: "Of both." *Second.* "Was it a reasonably prudent action for the plaintiff to remain in the street, exposed to the rain and cold during the time that his journey was interrupted on the night of the accident?" Answer: "Yes." *Third.* "Was it a reasonably prudent action for him to resume his journey, and drive home in his wet clothing, when, as he says he was, drenched to the skin?" Answer: "Yes." *Fourth.* "Did the plaintiff's exposure tend to increase or consummate whatever injury he received by the breaking of the axle and in falling over the dash-board?" Answer: "Yes."

It is sometimes said that a party charged with a tort, or with breach of contract, is liable for such damages as may reasonably be supposed to have been in the contemptation of both parties at the time, or with such damage as may reasonably be expected to result, under ordinary circumstances, from the misconduct, or with such damages as ought to have been foreseen or expected in the light of the attending circumstances, or in the ordinary course of things. These various modes of stating the rule are all apt to be misleading, and in most cases are absolutely worthless as guides to the jury. (*Leonard* v. *N. Y., etc., Tel. Co.*, 41 N. Y. 544.) Parties when they make contracts, usually contemplate their performance and not their breach, and the consequences of a breach are not usually in

their minds, and it is useless to adopt a fiction in any case that they were. When a party commits a tort resulting in a personal injury, he cannot foresee or contemplate the consequences of his tortious act. He may knock a man down, and his stroke may, months after, end in paralysis or in death—results which no one anticipated or could have foreseen. A city may leave a street out of repair, and no one can anticipate the possible accidents which may happen, or the injuries which may be caused. Here, nothing short of Omniscience could have foreseen for a minute what the result and effect of driving into this ditch would be. Even for weeks and months after the accident the most expert physicians could not tell the extent of the injuries.

The true rule, broadly stated, is that a wrong-doer is liable for the damages which he causes by his misconduct. But this rule must be practicable and reasonable, and hence it has its limitations. A rule to be of practicable value in the administration of the law, must be reasonably certain. It is impossible to trace any wrong to all its consequences. They may be connected together and involved in an infinite concatenation of circumstances. As said by Lord BACON, in one of his maxims. (Bac. Max. Reg. 1): "It were infinite for the law to judge the cause of causes, and their impulsion one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." The best statement of the rule is that a wrong-doer is responsible for the natural and proximate consequences of his misconduct; and what are such consequences must generally be left for the determination of the jury. (*Milwaukee & St. P. R. Co.* v. *Kellogg,* 94 U. S. 469.) We are, therefore, of opinion that the judge did not err in refusing to charge the jury that the defendant was liable " only for such damages as might reasonably be supposed to have been in the contemplation of the plaintiff and defendant as the probable result of the accident."

The judge charged the jury that the defendant was liable to the plaintiff, even if the disease from which he suffered were solely due to his exposure to the cold and rain after the

accident, provided he was free from fault and negligence in the exposure.   I am inclined to think that there was no error in this portion of the charge.   The exposure was the direct and proximate result of the accident.   The plaintiff and his family were unavoidably forced from his carriage into the rain and cold by the accident, and were thus exposed to those elements in consequence of defendant's wrong.   It was in the night time, and they could not remain in the carriage, and he could not avoid the rain.   He was bound to exercise reasonable prudence in taking care of himself and avoiding the consequences of the wrong done.   He had the option to stand in the street where the acccident had placed him, or to go home, exercising reasonable prudence and the best judgment he had. There is thus such a direct connection between the accident and the exposure as to make the defendant liable for the latter. It must, however, be admitted that there is considerable authority in opposition to these views.   (*Hobbs* v. *L. & S. W. R. Co.*, L. R., 10 Q. B. 111 ; *McMahon* v. *Field*, 44 L. T. [N. S.] Ch. Div. 175 ; *Waller* v. *M. G. W. Railway Co.*, 12 Ir. L. T. 145 ; *Pullman Palace Car Co.* v. *Barker*, 4 Col. 344 ; *Indianapolis, etc., R. Co.* v. *Birney*, 71 Ill. 391 ; *Francis* v. *St. L. Transfer Co.*, 5 Mo. App. 7.)   But the views expressed are not condemned by any authority in this State, and are fairly sustained by the cases of *Williams* v. *Vanderbilt* (28 N. Y. 217) and *Ward* v. *Vanderbilt* (4 Abb. Ct. of App. Dec. 521).

But even if the portion of the charge just referred to was erroneous, it was entirely harmless, as the jury found that the diseases from which the plaintiff suffered were the direct result both of the accident (the breaking of the axle and his falling over the dash-board) and the subsequent exposure, and that the effect of the exposure was simply to increase and aggravate the injury received from the accident.   The jury found that the plaintiff was blameless for the subsequent exposure, and, therefore, so far as that operated in causing injury to the plaintiff, it was a cause for which he was not responsible.   There were, according to the finding of the jury, two causes operating to produce plaintiff's injuries, each of which

was essential to produce the results. The accident without the exposure, and the exposure without the accident, would not have caused them. This case then comes within the principle decided in *Ring* v. *City of Cohoes* (77 N. Y. 83), where it was said: " When two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate — one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible — the municipality is liable, provided the injury would not have been sustained but for such defect;" and " when several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have happened, it may be attributed to all or any of the causes; but it cannot be attributed to a cause unless, without its operation, the accident would not have happened." Here, as I understand the findings of the jury, the plaintiff's injuries would not have been suffered but for the strain and shock of the accident. While both causes were proximate, that was the nearest and most direct. Still further. It was certainly impossible for the plaintiff to prove, or for the jury to find, how much of the injury was due to either cause alone. It was wholly impossible to apportion the damage between the two causes. Shall this difficulty deprive the plaintiff of all remedy? We answer no. The wrong of the defendant placed the plaintiff in this dilemma, and it cannot complain if it is held for the entire damage.

We have thus examined with the care which the importance of this case seems to demand the principal questions involved upon this appeal. There are some other exceptions noticed in the brief of the learned counsel for the city, but they are not of sufficient importance to require discussion here. They do not seem to be much relied on and clearly point to no error.

The order of the General Term, reversing the judgment and granting a new trial, should be reversed, and the judgment entered upon the verdict should be affirmed, with costs of the appeal to the General Term and to this court.

All concur.

Order reversed and judgment affirmed.