(68 App. Div. 49.)

## CLARK v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. January 17, 1902.)

**1.** STREET RAILWAY—CONDITION OF CAR—ASSUMPTION OF RISK.

Defendant's cars were so arranged that at the end of a line, and before starting back, it was necessary to raise a bar and lower a step on one side of the car. Plaintiff was at the end of the line when a car arrived, and attempted to get on before the step was lowered, and as it was lowered it struck his knee. He was accustomed to taking the car at that point, and knew that the step must be lowered, but did not notice that it was not lowered until it struck him. *Held*, that he took the risk of an injury incident to the condition of the car when he attempted to board it.

**2.** SAME—DAMAGES—PERMANENT INJURY—EVIDENCE.

Where the complaint alleged that by the negligence of a street railway company plaintiff received a fracture of the kneecap, which disabled him for four months, but did not allege that such injury was permanent, it was error to receive evidence of and to award damages for a permanent injury.

O'Brien and Hatch, JJ., dissenting.

Appeal from trial term, New York county.

Action by Frank C. Clark against the Metropolitan Street Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Theodore H. Lord, for appellant.
Alexander S. Bacon, for respondent.

INGRAHAM, J. The plaintiff was injured in endeavoring to get upon one of the cars of the defendant's railroad at Astor Place and Broadway. He was a passenger upon a Broadway car coming uptown, and alighted from this car at Broadway and Astor Place, receiving a transfer ticket, which would entitle him to continue his route uptown upon the Madison Avenue Line, starting from the intersection of Astor Place and Broadway. The Madison avenue car, an open car, had come down Madison avenue, and upon arriving at Astor Place and Broadway it was necessary, before passen-

gers could board the car on its north side, to raise a parallel bar running the length of the car, and let down a step running along the side of the car; while on the south side of the car it was necessary to lower the bar and raise the step. The plaintiff, with several other passengers, were waiting at Broadway and Astor Place to board a car. One passenger, who boarded the car on the south side, testified that he saw the plaintiff approach the car, and attempt to board it on the north side; that at that time the parallel bar had been raised, but the step had not been lowered; that as the plaintiff attempted to board the car the conductor lowered the step, and as the step fell it struck the plaintiff on the knee. The plaintiff testified that he waited for this car; that the passengers began to "pour in and passengers began to pour out"; that "there were people getting in and being seated"; that he then took hold of the two side bars, and was just ready to step in, when something hit him on the knee, and he fell; that he had been in the habit of changing cars at this place for several years, and that the rule was to put the step down for the passengers to step on; that he knew that when the car stopped the step would come down for the passengers to step on in order to get into the car, but that he considered that the step was down; that he was looking at the side bar, and did not look to see whether the step was down or not. The accident thus resulted from the plaintiff's attempt to board the car before the step had been lowered which would have enabled him to board it in safety. He knew the step had to be lowered before the car could proceed uptown. He assumed that it had been lowered because the bar was raised, but there was nothing to justify that assumption. There was no invitation to the passengers to board the car by the employés of the defendant, and nothing to justify the plaintiff in assuming that the change had been made which he knew had to be made. There is nothing to show that the conductor, while attending to his duty in lowering this step and raising the bar on one side of the car, saw that the plaintiff was in a position in which he could be injured by the lowering of the step; and the evidence is that the whole occurrence—the arrival of the car from uptown, the change in those bars and steps, the rush of the passengers to board the car—all took but a very few moments, and this would seem to be a case in which the accident was caused by the act of the plaintiff in attempting to board the car before it was in such a condition that passengers could safely board it. The plaintiff took the risk of an injury incident to the condition of the car when he attempted to board it. He acted upon the assumption that the step was down without making any investigation as to its actual condition, and without waiting for an invitation from the conductor, with knowledge of the fact that this change in the fixtures of the car was necessary before the car could proceed on its trip uptown. The fact that other passengers rushed to board the car was not sufficient to justify the plaintiff in assuming that the car was in a condition that would enable him to board it in safety, and I do not think that we are justified in holding the defendant liable for an injury which resulted from the plaintiff's attempting to

board the car before the necessary changes had been made which
he knew had to be made, when an inspection would have disclosed
the fact that the car was not ready for passengers to enter from
the side from which the plaintiff attempted to enter it.

I also think that it was error to admit the testimony as to the
permanent character of the injury, and to allow the jury to include
in their verdict the damages caused by such permanent injury.  The
complaint alleged that by reason of negligence of the defendant
and its agents or servants the plaintiff received a fracture of the
kneecap of the right leg, which injury disabled the plaintiff from
attending to his business, and confined him to his house for the
period of four months, to the plaintiff's damage of $15,000.  There
is no allegation that the injury was continuing, that it was perma-
nent, or that future damage would result.  The allegation of damage
is confined to the past effect of the injury.  Upon the examination
of Dr. Tuttle he was asked:  "From your knowledge of the wound
and the operation, will his [the plaintiff's] injury be permanent or
temporary?"  That question was objected to as not within the plead-
ing, and, after an intimation that there was doubt as to the com-
petency of the testimony, the court said, "If you are willing to take
the risk of it, I will allow Dr. Tuttle to swear;" to which counsel
for the plaintiff replied, "We are."  The question was then changed
so that the witness was asked, "What will be the probable result of
this injury to the plaintiff?"  This was objected to as incompetent,
immaterial, irrelevant, and not pleaded, which objection was over-
ruled, to which the defendant excepted.  The answer was:  "The
loss of motion in the knee joint, with stiffness and inability to walk
without a limp, or to use the knee in the normal way."  In sub-
mitting the case to the jury the learned trial judge, upon the ques-
tion of damages, charged:  "It is entirely within your province to
award to Mr. Clark whatever sum, in your judgment, will be a
fair and reasonable compensation to him for the pain and suffering
which he endured during his immediate illness and for the future
results to him of these occurrences;" and, commenting upon Dr. Tut-
tle's testimony, the court said:  "Dr. Tuttle has described to you as
to how the patella or kneecap was fractured; how he treated it; that
he made six or seven visits, I think; and that, in his opinion, the
result of this injury is a stiffening of the right leg, due to stiffness
at the knee joint, which loss of motion will, in his opinion, be per-
manent."  At the end of the charge counsel for the defendant ex-
cepted to that part "of your honor's charge referring to the award-
ing of damages for future results of this accident to the plaintiff."
This exception certainly was broad enough to cover the charge of
the court that the jury was entitled to consider, in fixing the amount
of damage, the fact that there was evidence to show that this in-
jury would be permanent, or that the plaintiff would in the future
suffer from the injury.  There was no evidence in the case that a
fracture of the patella would necessarily cause a permanent injury,
or that the probable result of such a fracture would be a permanent
injury to the knee.  Dr. Tuttle had testified that in this particular
case the knee would be permanently stiffened, but the condition was

not such as in the case of a loss of an arm or a leg or an eye, where a permanent impairment would necessarily result. In the case of the breakage of one of the bones of the body it is possible that a permanent disability would follow, but that is by no means the probable result of a simple fracture.

The question as to the requirement of pleading special damages in actions of this character has been discussed in several late cases in the court of appeals, and we think the rule as now established requires that where it is sought to recover for permanent injuries in a case where the permanent condition is the natural, but not the necessary, result of an injury, the fact that the injury is permanent, and that damages will flow in the future from the result of the accident, must be pleaded.

In Gumb v. Railway Co., 114 N. Y. 411, 21 N. E. 993, it was held that:

"When a plaintiff alleges that his person has been injured, and proves the allegation, the law implies damages, and he may recover such as necessarily and immediately flow from the injury (which are called 'general damages') under a general allegation that damages were sustained. But if he seeks to recover damages for consequences which do not necessarily and immediately flow from the injury (which are called 'special damages'), he must allege the special damages which he seeks to recover."

See, also, Uransky v. Railroad Co., 118 N. Y. 304, 23 N. E. 451, 16 Am. St. Rep. 759.

In Geoghegan v. Railroad Co., 51 App. Div. 369, 64 N. Y. Supp. 630, the presiding justice said:

"The exception to the evidence in regard to the permanent injury to the eye seems to be of a more serious character. There was nothing in the complaint which called attention to an injury of that kind. It was clearly in the nature of special damages; and the rule has been recently reiterated in the court of appeals that, unless the injuries for which damages are sought to be recovered necessarily and immediately result from those described in the complaint, they must be specially alleged as special damages, or a recovery cannot be had for such injuries. * * * This rule of pleading gives a clear and unmistakable guide to the court in the admission of proof, and to the defendant in his preparation for trial. Injuries which inevitably result from those described in the complaint, and which the defendant must know from the allegations of the complaint had been suffered, may be recovered for under the general allegations. But where the injury is of a character which does not necessarily result from that described in the complaint, then the defendant has no reason to expect proof of any such unsuspected injury upon the trial."

The plaintiff relies upon the case of Ehrgott v. Mayor, etc., 96 N. Y. 264, 48 Am. Rep. 622. In that case the allegations of the complaint were held sufficient to prove that the injury would be permanent, but the complaint alleged that the plaintiff suffered great bodily injury; that he became, and still continues to be, sick, sore, and disabled; that he was obliged to spend large sums in attempting to cure himself, and was prevented for a long time from attending to his business, and that he was otherwise injured to his damage $25,000. And it was held that these allegations were sufficient to authorize proof of any bodily injury resulting from the accident; that if the defendant desired that they should be more definite, it could have moved to have them made more specific, or for a bill of particulars.

It will be noticed that the general bodily injuries for which the plaintiff sought to recover damages were alleged to still continue at the time of the commencement of the action. The allegations in that complaint were not, as in this, confined to a period prior to the commencement of the action. There is no allegation in the complaint in this action that the injuries for which the plaintiff sought to recover continued when the action was commenced, nor is there any allegation or proof that there necessarily resulted from a fracture of the patella a permanent injury; and the court cannot take judicial notice of the fact that the necessary result of a fracture of the patella is a permanent injury. In an action of this kind we think it but fair to the defendant that, if the plaintiff seeks to recover for a permanent injury, he should allege that the injury caused by the accident was of a permanent character. The consequences of such an injury is much more serious than that of one from which there has been a complete recovery. The defendant is given the right to require a physical examination of the plaintiff, and, while such an examination might be unnecessary where there is no claim made that an injury is permanent, it would be most important to enable a defendant to meet the plaintiff's proof when it is alleged to be of a permanent character.

The judgment and order should, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

The action was brought to recover for personal injuries sustained by the plaintiff on the afternoon of July 1, 1898, as he was about to board the defendant's car at Astor Place; the com, laint alleging that while he "had his hands upon the hand rails thereof the conductor * * * without any warning * * * violently threw the step along the side of the said car next to the plaintiff downward,'' and "the edge of said step violently struck the plaintiff upon the kneecap, and fractured the same." Further the complaint alleges: "That by reason of said negligence of the said defendant * * * plaintiff received the injury aforesaid of fracture of the kneecap of the right leg, which said injury disabled plaintiff from attending to his business and confined him to his house for the period of four months, to the plaintiff's great damage of $15,000." The plaintiff testified that he was the sole manager and proprietor of tourist enterprises, and his specialty was running large excursions to the Orient, and chartering steamers to Europe, his chief office being at 111 Broadway, with others at Cairo, Jerusalem, and so on; that his home is in New Rochelle, and on the afternoon in question he came uptown on a Broadway car, as was his custom, and got out to transfer at Astor Place; that he did not rush, but let one car go, and waited for another, which, when it arrived, had the bar up on the south side; that the car was about half full, and people were getting in on both sides; that a man beside him stepped in from the south side, and he supposed he stepped on the step, and he had never seen the bar up when the step was not down; that he supposed the step was down, and took hold of the two side bars, and did not look to see if the step was down; and, as he was just ready to get in, something hit him on the knee, and he fell in a dead faint. Solomon Heller testified that he got on the north side of the car, and was seated, and the car was stopped when the plaintiff got hold of the car right in front of him on the south side, and attempted to get on, when the conductor threw down the step,—the bar being already raised,—and the plaintiff fell. It further appears from the evidence that the plaintiff, although he was able to get to his home after the accident, had broken his kneepan into two frag-

ments, and the operation was necessary, and was performed, of wiring the fragments together. The physician who performed the operation was asked, "From your knowledge of the wound and the operation, will his injury be permanent or temporary?" and objection being made to this question as to form, and that there was no allegation of permanence in the pleadings, it was changed, and the witness was asked, "What will be the probable result of this injury to the plaintiff?" The objection that this question was immaterial, and not pleaded, was overruled, and exception taken, and the doctor responded, "The loss of motion in the knee joint, with stiffness and inability to walk without a limp, or to use the knee in the normal way." Thereafter the physician explained that the thin kneecap separates as soon as broken, on account of muscular contraction, and must be sewed so that it will unite. In charging the jury the court said: "It is entirely within your province to award to Mr. Clark whatever sum, in your judgment, will be a fair and reasonable compensation to him for the pain and suffering which he endured during his immediate illness, and for the future results to him of these occurrences;" and thereafter charged: "Dr. Tuttle has described to you how the patella or kneecap was fractured, * * * and that, in his opinion, the result of this injury is a stiffening of the right leg, * * * which loss of motion will, in his opinion, be permanent." At the conclusion of the charge the defendant's counsel said: "Our only exception is to that part of your honor's charge referring to the awarding of damages for future results of this accident to the plaintiff." The jury returned a verdict in favor of plaintiff for $7,000, and from the judgment so entered the defendant appeals.

O'BRIEN, J. (after stating the facts). Four questions are presented upon this appeal: Whether there was evidence of the defendant's negligence to support the jury's finding; whether the evidence warranted the inference that the plaintiff was free from contributory negligence; whether there was error in the admission of evidence and in the charge of the court as to future results of the accident; and whether the verdict was grossly excessive.

Upon the first subject—the defendant's negligence—the testimony is that when the car came to a stop in Astor Place the bar on the south side was up, and the step was not down, and that while the plaintiff was in the act of getting in the car the conductor, without warning, threw down the step, thus inflicting the injury. The defendant points out that the two acts of raising the bar and of putting down the step could not be done simultaneously, and that, if the step had been down first, and the bar then raised, an accident of a different kind might have happened. It is evident, however, that an accident in the latter way was less likely to occur, because the bar was more easily seen by the people approaching the car than was the step. Moreover, the evidence is that the bar was up when the car arrived, and, as people had thereafter entered, as testified by the plaintiff, particularly concerning a man who stood beside him, a considerable period elapsed before the step was thrown down; and the evidence shows that, although there were a number of people attempting to board the car on the south side, no warning whatever was given by the conductor in throwing down the step. It is contended by the defendant that the fact that the bar was up was not submitted to the jury, and therefore, unless the evidence supports the theory that the accident occurred by the lowering of the step, the verdict cannot stand. Craig v. Powder Co., 55 App. Div. 49, 67 N. Y. Supp. 74, and Stevenson v. Railroad Co., 35 App. Div. 474, 54 N. Y. Supp. 815. If

this contention were well founded, we think that the evidence would support the verdict as to defendant's negligence, since the conductor should not, when people were crowded around the car attempting to get in, deliberately lower the step without warning. But the fact that the bar was up was submitted to the jury. The court, in the charge, referred to the contention that the conductor could not act simultaneously, and said: "Whether it was negligent in Mr. Clark, the bar being up, to endeavor to board the car before the step was let down, is a question for you to decide. * * * If you find that the conductor was negligent in letting down the steps (under these circumstances being understood), and that Mr. Clark was free from negligence, then you must consider the extent of his injuries." And again, the court said: "but if you find that there was no negligence on the part of this conductor in letting down this step as testified to," etc. The testimony was that the conductor had let down the step when the bar was up, and without giving warning; and the court clearly had this testimony in mind. There was thus presented to the jury sufficient evidence to support their finding that the defendant was negligent.

The same testimony supports the inference that the plaintiff was free from contributory negligence. The plaintiff, as he approached the car, which was standing still, saw that the bar was up, and this was clearly an invitation to get aboard on that side. He testifies further that he had never known the step to be up when the bar was, and that he supposed the step was down; that he saw the car half full of people, and people getting aboard, and that a man beside him stepped in the car, and he thought he stepped on the step; that he did not rush, but he wanted to get on that car, and he raised his hands, and took hold of the bars, and was about to step up, thinking the step was down, when he was struck. Under such circumstances we think it is a fair inference that the plaintiff acted as any reasonably prudent man would have acted, and that it cannot be said as matter of law that he was guilty of contributory negligence.

The third question relates to the question and the testimony as to probable results of the injury. It will be noticed that the first question put as to the duration—whether "permanent or temporary"—was not asked, the question objected to being, "What will be the probable result of this injury to the plaintiff?" In regard to the form of the question, the use of the word "probable," instead of the words "reasonable certainty," is not erroneous, and is upheld by authority. Thus, in Ney v. City of Troy, 50 Hun, 604, mem., 3 N. Y. Supp. 679, it was held that "the testimony of a medical expert as to the probable duration of plaintiff's pain, who testifies that it is extremely doubtful whether plaintiff will ever recover from it," is proper, and not within the rule in Strohm v. Railroad Co., 96 N. Y. 306, excluding testimony when the apprehended consequences are contingent, speculative, or merely possible. And in Filer v. Railroad Co., 49 N. Y. 42, a physician was allowed to testify as to the probability of a recurrence of an inflammation, and as to the probable effect of the general health of the injured person. See, also, Lincoln v. Railroad Co., 23 Wend. 425. The further objection that such

damages were not pleaded we do not think should be sustained. Under a general allegation, such damages as naturally or necessarily flow from the injury may be proved without being specially pleaded. Ehrgott v. Mayor, etc., 96 N. Y. 264, 48 Am. Rep. 622; Ayres v. Railroad Co., 158 N. Y. 254, 53 N. E. 22. Although the complaint contained no allegation that the injury was permanent, it did allege "a fracture of the kneecap," which "disabled plaintiff from attending to his business"; and it was perfectly proper to explain what such an injury was, and what were the results of it. This could be done only by a physician with knowledge of fractures and of this injury, and the doctor testified that such probable result was loss of motion, stiffness, and inability to use the knee in the normal way. He did not say that the injury was permanent, and immediately thereafter he further explained what happened when a kneepan was fractured. All this testimony was properly given within the allegations of the complaint, and it only remains to examine the charge relating to it. The court referred to this testimony as "future results," instead of "probable" results, but the intention was evidently to refer to the nature or character of the injury alleged; and later in the charge the learned trial judge stated that the doctor had, he thought, described the fracture and the operation, and said that, in his opinion, the loss of motion would be permanent. The court thus went a step beyond the testimony, but prefaced the statement by "I think." Thereafter the defendant's counsel excepted only to that part of the charge referring to awarding damages for "future results." The exception thus related to the first portion of the charge, and not to the latter; and there was no request to charge that there was no evidence of permanent injuries. As far as "future results" were concerned, the testimony related to probable results of unstated duration, which naturally followed the fracture of the knee; and thus neither the testimony itself nor the part of the charge excepted to furnishes a ground for reversal.

The damages awarded ($7,000) were not, considering the position and business standing of the plaintiff and the probable results of such an injury, excessive.

We think, therefore, that the judgment should be affirmed, with costs.

HATCH, J., concurs.