PEOPLE ex rel. RYAN v. CIVIL SERVICE BOARDS. 287

FIRST DEPARTMENT, JUNE TERM, 1886.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. RICHARD W. RYAN, Respondent, v. THE CIVIL SERVICE SUPERVISORY AND EXAMINING BOARDS OF THE CITY OF NEW YORK, etc., Appellant.

*Employees of the commissioners, appointed to construct the new aqueduct, are employees of the city of New York and subject to examination by its Civil Service Commissioners — 1883, chap. 490 — 1884, chap. 410, sec. 8.*

The relator having applied to the secretary of The Civil Service Supervisory and Examining Boards for examination under the New York city civil service regulations, for employment as a clerk, copyist or book-keeper, by the commissioners for building the new aqueduct, created by chapter 490 of 1883, his application was rejected upon the ground that such commissioners were not officers of the city of New York, but of the State, and that their employees are not included within the civil service system of the city.

*Held*, error.

That the persons employed by the aqueduct commissioners were employees of the city, and were accordingly within the description of persons required to be examined by the Civil Service Commissioners, as provided in section 8 of chapter 410 of 1884.

APPEAL from an order granting the application of Richard W. Ryan, relator, for a peremptory *mandamus* to compel the Civil Service Supervisory and Examining Boards of the city of New York, and Charles H. Woodman, secretary thereof, to entertain the application of said Richard W. Ryan, and notify him to appear for examination pursuant to the civil service regulations of the city of New York.

The relator shows that he applied to the secretary of the New York Civil Service Supervisory and Examining Boards for examination, under the New York city civil service regulations, for employment by the commissioners for building the new Croton aqueduct, and that the application was rejected upon the ground that such commissioners are not officers of the city of New York, but of the State, and that their employees are not included within the civil service of the city. The employees of such commissioners had been included by Mayor Edson in his classification of the city civil service.

Upon the hearing at Special Term the following opinion was delivered :

288   PEOPLE ex rel. RYAN v. CIVIL SERVICE BOARDS.

First Department, June Term, 1886.

" Lawrence, J. :

This is an application for a peremptory *mandamus* to compel the Civil Service Supervisory and Examining Boards of the city of New York, and Charles H. Woodman, the secretary thereof, to entertain the application of Richard W. Ryan, and notify him to appear for examination pursuant to the New York city civil service regulations.

It appears by the affidavit of the relator that he has applied to the secretary of the said boards for examination for employment by the commissioners for building the new Croton aqueduct, and that his application has been refused on the ground that the said commissioners are not officers of the city of New York, and their employees are not included within the civil service of the city of New York. It appears, also, from the papers submitted on the part of the relator, that in the month of August, 1884, the mayor of the city arranged a certain classification of the civil service of the city of New York, and that in such classification were included the clerks and employees of the aqueduct commission, and that such employees were so included after consultation with the State Civil Service Commissioners, and upon their advice that such employees were persons in the employ of the city, and not of the State. It appears from the papers read by the counsel to the corporation that the contrary opinion has been expressed by him and his predecessor in office, and this proceeding has been brought for the purpose of determining whether officers and employees of the aqueduct commission are subject to the civil service regulations of the city or those prescribed by the State Civil Service Commissioners. It cannot be disputed that the aqueduct commissioners are new officers, and that at the time of the passage of chapter 490 of the Laws of 1883, creating such commissioners, there were no officers in existence in the city government who were authorized to exercise the powers confided to said commissioners by said act. This, however, is not conclusive upon the question whether the commissioners are to be regarded as State or city officers. Nor does the case of the *People ex rel. Wood* v. *Draper* (15 N. Y., 532) determine the question which is here presented for consideration. That case holds that section 2, article 10 of the Constitution of 1846 leaves the legislature at liberty to provide for the election or appointment, in

any manner it may deem suitable, of all officers, local or general, whose offices might thereafter be created by law; and also of all other than county, city, town or village officers whose offices were then in existence, but the mode of whose election or appointment was not prescribed by the Constitution. Under that decision the legislature may create a new city office and may prescribe the manner in which the same may be filled, whether by election or appointment or in any manner it may deem suitable.

The case of the *Metropolitan Board of Health* v. *Heister* (37 N. Y., 661) is to the same effect. (See, also, *People* v. *Pinckney*, 32 N. Y., 382.)

Some light may, however, be thrown upon this question by the decisions which were made by the Supreme Court and late Court of Errors in relation to the liability of the city of New York for acts done or omitted by the water commissioners appointed under the acts of 1833 (chap. 36) and 1834 (chap. 256), under which the Croton was first introduced into this city. The powers conferred by those acts upon the commissioners therein provided for were very similar, although not specified in the acts so much in detail as those confided to the aqueduct commissioners of 1883.

In *Appleton* v. *The Water Commissioners of New York* (2 Hill, 432), it was intimated, although not expressly decided by Bronson, J., in delivering the opinion of the court, that the remedy on the contract made by such commissioners was against the corporation of the city of New York.

In *Bailey* v. *The Mayor, etc., of New York* (3 Hill, 538), it was held that commissioners appointed under the act of 1834, though appointed by the State, were the agents of the corporation, and that the latter was, therefore, liable for injuries sustained by the plaintiff's land arising from the careless and unskillful construction of a dam across the Croton river. That case subsequently went to the Court of Errors, and is reported in 2 Denio (p. 433) as *The Mayor, etc., of New York* v. *Bailey*, and it was held that the corporation was liable to third persons for injuries sustained by them by the negligent and unskillful construction of the dam in question.

If these cases have not been restricted or modified by subsequent decisions, it would appear that the aqueduct commissioners, although appointed by the legislature, are the agents of the city; and if the

290 PEOPLE ex rel. RYAN v. CIVIL SERVICE BOARDS.

First Department, June Term, 1886.

agents of the city, that they are within the provisions of the act in relation to the civil service of the city.

It is said, however, by the learned counsel to the corporation, that this case is within the principles stated in *Russell* v. *The Mayor* (2 Denio, 461); *Martin* v. *The Mayor, etc.* (1 Hill., 545), and *The New York and Brooklyn Saw-Mill and Lumber Company* v. *The City of Brooklyn* (71 N. Y., 580).

In *Martin* v. *The Mayor, etc.*, it was held that a municipal corporation is not liable for the misfeasance or nonfeasance of one of its officers in respect to a duty specifically imposed by statute on the officer; otherwise if the duty is one imposed absolutely on the corporation as such. In that case the plaintiff sued the corporation of the city of Brooklyn, alleging that while Brooklyn was a village the president and trustees instituted proceedings for the purpose of laying out certain streets, and went on to an assessment of damages pursuant to the statute. That a sum was awarded to the plaintiff for his land, proposed to be taken, and that the commissioners of estimate, etc., reported to the trustees, and that the proper notices were given and published, but though no appeal was interposed, they had willfully omitted the duty of causing the report to be filed with the clerk of the Common Pleas of Kings county, so that it could be confirmed. It was also alleged that the board of trustees, after the assessment was returned, resolved that it was expedient to open the streets, provided the parties interested would waive the first report, the filing of the same, and the appointment of commissioners; and that a committee should be appointed to treat and agree with the owners of ground required for the streets, and the plaintiff consented to such waiver, in writing, was willing, etc., and gave notice, etc., but that the trustees refused to proceed in the fulfillment of the agreement. The court held in that case that municipal corporations were not liable for omissions of duty specifically imposed by statute on one of their officers. That in that respect the latter are *quasi* civil officers of the government, though appointed by the corporation, and that the relation of master and servant did not exist between the corporation and the officers.

In *Russell* v. *The Mayor, etc.* (2 Denio, 461), it was held that the mayor and aldermen, in making an order for the destruction of a building, pursuant to the statute, did not act as the officers or

PEOPLE ex rel. RYAN v. CIVIL SERVICE BOARDS. 291

First Department, June Term, 1886.

agents of the corporation, but as magistrates designated by the legislature for the execution of a public duty. In that case, Porter, Senator, in his opinion, distinguishes the case of *Bailey* v. *The Mayor*, etc., from that of Russell, on the ground that in the former case "the corporation had an interest in the grant made by the law;" that "it held a large amount of property under it; had passed ordinances in respect to the execution of the work and the doings of the commissioners; and in every respect had made the work their own, and consequently had made the commissioners their agents."

In the *New York and Brooklyn Saw-Mill and Lumber Company* v. *City of Brooklyn* (71 N. Y., 580), it was held that "a municipal corporation is not liable for the acts or omissions of an officer, elected or appointed by it, in respect to a duty specifically imposed upon the officer, which is not connected with his duties as agent of the corporation, and in which it has no private interest." That " it is only liable for the acts and omissions of officers in the performance of duties imposed upon the corporation."

The complaint in that action alleged, in substance, that "by an act to improve the Gowanus canal, in the city of Brooklyn (chap. 678, Laws of 1866, and the acts amendatory thereof; chap. 884, Laws of 1867; chap. 793, Laws of 1869), commissioners were appointed to dock the sides of said canal, the expense to be assessed upon the property; that the commissioners caused docks to be erected in and upon the plaintiff's land adjacent to said canal, but prosecuted the work so negligently that the dock sank; that, by an act passed in 1871 (chap. 839, Laws of 1871), it was provided that the common council of the city should cause the docks to be repaired or rebuilt at the expense of the city; that thereby the duty to rebuild the dock on plaintiff's land was imposed upon the city, which it had neglected to perform, to his damage, etc." Upon demurrer to the complaint it was held that the court "could not take judicial notice that the canal was a public highway, and, in the absence of allegations to that effect, could not presume it to be such; that, so far as appeared, the work was for the benefit of individuals solely; that it appears, by the amendatory act of 1869, to have been the intention of the legislature to substitute the common council for the commissioners, without affecting the relations

of the city to the work; that both bodies were to be regarded as agents of the State, not of the city, and for their acts or omissions the city was not liable; that the act of 1871 did not impose the duty of rebuilding upon the city, but the directions therein to the common council, it was to be presumed, were given to them as State agents, and that, therefore, the city was not liable." It was also held "that the fact that the expense of rebuilding was cast upon the city did not affect its liability."

It will be observed, upon examining the three cases last cited, that they are placed upon the ground that the work to be done was not a corporate work, but was either a work for the benefit of private persons or directed to be done by the statute of the State, having no relation to corporate duties or interests.

In that case, Church, C. J., at page 584, says: "A municipal corporation is held liable for the acts of an agent it employs to do business for its own corporate or private benefit, the same as a private individual, and this, although the agent may be appointed by the legislature, or under a legislative authority, if it accepts and ratifies the appointment," and he cites approvingly the case of *Appleton* v. *The Water Commissioners* (2 Hill, 433), to which I have above referred. He also says that " we have recently held that a municipal corporation is not liable for the omission to perform or for negligence in the performance of a public duty, laid upon an independent officer, in which it has no private interest, and from the performance of which it derives no special or corporate benefit, although it is required to elect or appoint such officer, and although the officer has in charge, and the negligence imputed is the use of, property owned by the corporation," citing *Maxmilian* v. *The Mayor, etc.* (62 N. Y., 160), and other cases.

Folger, J., in delivering the opinion of the court in *Maxmilian* v. *The Mayor, etc.* (62 N. Y., 170), after having referred to certain cases, and among others to that of *Bailey* v. *The Mayor, etc.* (2 Denio, 433), says, at page 170 : " It is not always easy to say within which class a particular case should be placed. But when it is determined that the power and duty are given and taken for the benefit of the corporation as a corporate body, and the act to be done is to be done by it through agents of its appointment, and under its control and power of removal, there is no doubt of its

liability for negligent omission or negligent attempt at performance. When the powers created and duly enjoined are given and laid upon officers to be named by the corporation, but for the public benefit and as a convenient method of exercising a function of general government, and the corporation has no immediate control nor immediate power of removal of those officers, nor of their subordinates and servants, then it is not liable for their negligence, omission or action."

In that case it was held that the city corporation was not liable for the negligence of an employee of the commissioners of charities and correction in driving an ambulance wagon belonging to the city which struck and caused the death of the plaintiff's intestate, and it was held that the duties of such commissioners were public in their character, and that from their performance no special corporate benefit is derived.

Is it not, however, clear that from the work to be performed by the aqueduct commissioners a special and corporate benefit will be derived by the city of New York; and can it not with much force be urged that, under the decision in the Maxmilian case and the cases of *Bailey* v. *The Mayor, etc.*, and *Appleton* v. *The Water Commissioners* (*supra*), the aqueduct commissioners, though appointed by the State, are to be regarded as agents of the city, and therefore city officers? As I have already said, the duties which were to be performed by the water commissioners, under the acts of 1833 and 1834, were very similar to those confided to the aqueduct commissioners under the act of 1883, and it seems to me that if the former commissioners were regarded as the agents of the city, the latter must be also.

By section 1 of the act of 1883, chapter 490, the mayor, comptroller and commissioner of public works, and certain individuals therein named, are appointed commissioners for the purpose of supplying the city with an increased supply of pure and wholesome water. The salary of the commissioners is to be fixed by the board of estimate and apportionment. The commissioner of public works is to prepare plans, etc., which are to be submitted by him to the commissioners, who may adopt, modify or reject the same in whole or in part. The plans are to be filed, etc. Maps are also to be prepared by the commissioner of public works, to be filed as

294 PEOPLE ex rel. RYAN v. CIVIL SERVICE BOARDS.

First Department, June Term, 1886.

in the acts specified ; and the counsel to the corporation for and on behalf of the mayor, aldermen and commonalty of the city of New York is required to apply to the Supreme Court for the appointment of commissioners of appraisal, to appraise the compensation to be made to the owners, etc., of the real estate proposed to be taken, etc., for the purpose indicated in the act. The fee of the lands taken is to be vested in the mayor, aldermen and commonalty of the city of New York. The corporation counsel is to present the report of the commissioners for confirmation. The awards made by the commissioners when confirmed are to be paid by the city within four months. In case of default, a right of action therefor is given to the party in whose favor the award is made. It is also provided that the aqueduct commissioners, subject to the approval of the board of estimate and apportionment of the city of New York, may agree with the owners, etc., as to the amount of compensation to be paid to such owners for the taking or using and occupying of real estate.

" By section 25 of the act, upon filing the oath of the commissioners of appraisal, etc., the commissioner of public works shall from time to time, as may be necessary, prepare and submit to the aqueduct commissioners and to the counsel to the corporation, forms of contracts and specifications and bonds for the faithful performance thereof. It is further provided that said forms shall be either approved or rejected by the said aqueduct commissioners, and shall be approved as to form by the counsel to the corporation ; and in case of rejection of the same, said commissioner of public works shall prepare and submit other forms, etc. It is further provided that the aqueduct commissioners shall determine what provisions shall be embodied in said contracts in order, so far as may be possible, to save the city from loss, embarrassment and litigation by reason of any work done or supplies furnished thereunder.

" By section 30 it is provided that the contracts when awarded shall be executed in triplicate by the contractor or contractors on the one part and the aqueduct commissioners, acting for the city of New York, on the other part. Two of said originals are to be filed, one in the finance department, the other with the aqueduct commissioners, and a copy thereof shall be furnished to the department of public works.

PEOPLE ex rel. RYAN v. CIVIL SERVICE BOARDS.  295

First Department, June Term, 1886.

" By section 31 the salaries and compensation of the persons employed as provided for in this act · * * * shall be paid by the comptroller of the city of New York on the certification of the said aqueduct commissioners or of such person or persons as may be designated by them. It is also provided that the various sums of money growing due from time to time under the terms of the several contracts made for the doing of the work and furnishing the material required by this act shall be paid by the comptroller, etc., on the certificate of the said aqueduct commissioners, or such person or persons as may be designated by them.

" By section 32 the comptroller is directed to raise from time to time, on bonds of said city, such sums of money as shall be sufficient to pay for any real estate and all damage, etc., * * * and also in paying for the construction of said aqueduct.

" By section 34 the mayor and comptroller are authorized to sign said· bonds, and it is made the· duty of the clerk of the common council to countersign the same and affix thereto the seal of the said city.

" By section 39 the commissioners shall in every calendar month file in the office of the comptroller of the city of New York an account of all expenditures made by them or under their authority, and of all liabilities incurred by them during the preceding month, and an abstract of each such account shall be published in the City Record.

" By section 40 no person shall be appointed by the said aqueduct commissioners as inspector or superintendent who shall not be certified by at least three members of the commission to be competent, etc.; and by section 41 the commissioners are authorized to provide suitable offices, etc., * * * and to employ a secretary and all necessary clerks, messengers and employees, subject to the approval of the board of estimate and apportionment of the city of New York.

" It is apparent from the provisions of the act·that the work confided to the aqueduct commissioners is a city work, and one in which the corporation has a direct corporate and pecuniary interest. It is also conceded that the corporation has accepted the appointments made by the act of 1883, and is proceeding to avail itself of the provisions in said act contained. This seems to me to bring

the case within *Appleton* v. *The Water Commissioners* (2 Hill, 433), cited and approved by CHURCH, C. J., in his opinion in the *New York and Brooklyn Saw-Mill and Lumber Company* v. *The City of Brooklyn* (71 N. Y., 584). The case seems to be distinguishable from that of *Maxmilian* v. *The Mayor* (62 N. Y., 160), on the ground stated by FOLGER, J., in his opinion at page 170. It is hardly necessary to cite an authority to show that the work in question is a city work or purpose, but if it be necessary, the opinion of EARL, J., in *The People ex rel. Murphy* v. *Kelly* (76 N. Y., 487), is conclusive. The learned judge says : ' It is impossible to define in a general way with entire accuracy what a city purpose is within the meaning of the Constitution.  *  *  * It would not be a city purpose for the city of New York to build a railroad from that city to Philadelphia, or to improve the navigation of the Hudson river generally, between that city and Albany, although incidental benefits might flow to the city. Such works have never been regarded as within the legitimate scope of municipal government. On the contrary, it would be a city purpose to purchase a supply of water outside of the city and to convey it into the city, and for such a purpose a city debt could be created. So lands for a park for the health and comfort of the inhabitants of a city could be purchased outside of the city limits, yet conveniently near thereto.'

" See, also, the opinion of Judge EARL in *Walsh* v. *Trustees of the New York and Brooklyn Bridge* (96 N. Y., 437), in which it is held that the trustees of the bridge are the agents of the two cities ; and see *Ehrgott* v. *The Mayor, etc., of New York* (96 N. Y., 274).

" On the whole case, I am of the opinion that the officers created and appointed by the act of 1883 are local officers ; that the functions they are to perform are for the peculiar corporate and pecuniary benefit of the corporation of the city ; that, under adjudicated cases, the corporation of the city of New York is liable for their acts ; that they are the agents of the city, and that the act expressly recognizes the city's liability upon their contracts. Such being the case, I do not see how it can be claimed that the appointees and employees of the aqueduct commissioners should be examined' by the State civil service commissioners as State officers, and not by the civil service boards of the city of New York as local city officers. If, as has

been before shown, they are the agents of the city, they are not the agents of the State. The legislature have simply exercised in their appointment a power which, in the Metropolitan Police case, it was held they possessed, to appoint new local city officers, but the exercise of such power of appointment did not change the local character of the office or of the officer.

" The case of *Whitmore* v. *The Mayor, etc.* (67 N. Y., 21), is not in point. That case simply holds that clerks of the District Courts of the city of New York are not city but judicial officers, embraced within the judicial system of the State. The decision in that case only followed the case of *Quin* v. *The Mayor, etc.* (44 How. Pr., 266, and 53 N. Y., 627).

" It is contended by the corporation counsel that this proceeding is erroneously brought against nominal respondents, called the Civil Service Supervisory and Examining Boards of the City of New York; that there is no corporation bearing that name; that the civil service boards have no corporate existence, and that the proper respondents to be brought into court are the individuals who compose the boards.

" I think the counsel is right in this position, but as I understand him to assent that there should be an amendment, by which the respondents can be properly designated, I shall direct such amendment to be made. Much stress is laid by the learned counsel in his brief upon the inconvenience which will result from a determination that the employees of the aqueduct commissioners are subject to examination by the civil service boards of the city of New York. Such an argument cannot, of course, be taken into consideration, if the court regards it as plain that the appointees and employees of the commissioners are not exempt from such examination.

" I can discover nothing in the act which entirely exempts such appointees and employees from a civil service examination, and it appears that they have neither been examined by the State boards nor by the city boards. The provisions of section 40 in regard to a certificate by at least three members of the commission, as to competency and fitness, are confined to appointments of inspectors or superintendents. It is very doubtful whether, in the case of those appointees, the legislature intended that the certificate of the members of the commission should be in lieu of a civil service

298 PEOPLE ex rel. RYAN v. CIVIL SERVICE BOARDS.

First Department, June Term, 1886.

examination by the State board or by the city boards. It is not necessary for me to express an opinion upon that point, but the fact that a positive provision is made in regard to the certificate of qualification, to be obtained by certain appointees, is strong evidence that the legislature intended that all other appointees should be subject to the general laws of the State in reference to examinations as to qualifications.

" Let a *mandamus* issue in accordance with these views."

*D. J. Dean*, for the appellant.

*Frederick W. Whitridge*, for the respondent.

DANIELS, J. :

The relator was desirous of securing employment as a clerk, copyist, recorder or book-keeper, by the aqueduct commissioners for the construction of the new aqueduct under chapter 490 of the Laws of 1883. This work was wholly authorized for the benefit of the city of New York, to increase its supply of water, and the commissioners selected for its prosecution, included the mayor, the comptroller, the commissioner of public works of the city of New York, and three other residents of the city. The property required for the enterprise was to be acquired by the city of New York, and the expenses of both the property and the work were to be provided for and paid by the city. The State at large had no special interest whatever in the land to be obtained or the ends to be secured, but they were for the benefit, advantage and proprietorship of the city itself, and that was sufficient to constitute the persons who might be employed and engaged in it, officers, agents or employees of the city. They were, accordingly, within the description of persons required to be examined by the civil service commissioners, as that is contained in section 8 of chapter 410 of the Laws of 1884. For that section includes and requires to be examined all candidates, not afterwards excepted, for admission into the civil service of the city. The regulations to be adopted were directed to include the several clerks and persons employed, or being in the civil service of the city, subject to the exceptions already referred to, which does not include the case of the relator ; and as he designed to seek employment from the aqueduct commissioners, and the

business they were engaged in was that of the city itself, before he could be eligible to that employment his examination was required under this provision of the statute. For if he obtains the employment he sought, he will be in the civil service of the city itself. It is not necessary to inquire whether he will, in that manner, become an officer of the city, for this section of the statute is not restricted to that class of individuals, but it includes, generally, all clerks and persons in the civil service of the city. The employment he desired to obtain was a part of that civil service, and it was indispensable before he could obtain it, that an examination to ascertain his fitness, in respect to character, knowledge and ability, should take place. For these reasons, and those more at large assigned in the very full and complete opinion of Mr. Justice LAWRENCE, the writ of *mandamus* was lawfully directed to be issued at the suit of the relator, and the order from which the appeal has been taken should be affirmed, with costs.

BRADY, P. J., concurred.

Order affirmed, with costs.