RICHARD O'KEEFFE, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

*Negligence — accumulation of ice and snow upon a city sidewalk — proof that an accident was caused by new and not by old ice.*

In an action brought against a city to recover damages for an injury sustained by the plaintiff in falling upon a sidewalk, which was maintained in front of premises vacant except for an expressman's shanty, in a locality largely unimproved, and which was alleged to have become dangerous by reason of an accumulation of ice and snow thereon, it appeared that there was a strip of flagging about four feet wide in the middle of the sidewalk; that at times the snow upon the remaining portion of the sidewalk, which was not flagged and had not been cleaned, would be apt to melt and the water to flow upon the flagstones, and, together with the snow which had been trampled down upon the sidewalk and had melted, to freeze at night forming a smooth surface of ice; that the day preceding the accident was sufficiently warm to produce a thaw, but that low temperature followed and snow fell for some hours before the accident; that prior to two days before the accident, however, the snow had been trampled down, and either from rain or the freezing of the melted snow had formed rough ice. The plaintiff testified that he slipped on the newly-fallen snow and fell on the top of this ice, and that as he fell he swept the snow off and saw solid smooth ice underneath.

*Held,* that in order to establish a cause of action it was necessary to prove something more than that ice and snow had formed upon the sidewalk and that the plaintiff had sustained injury therefrom;

That it was not the duty of the city to see that this whole sidewalk was cleaned as long as a reasonably safe space was made for pedestrians to use it, considering the surrounding locality and the use to which it was put;

That proof of the condition of the weather on the day of, and on that preceding the accident, considered in connection with the fact of the existence of snow on the adjoining premises on the preceding day, justified the conclusion that the accident was not the result of the old and rough ice which had accumulated on the sidewalk but of newly-formed ice.

BARRETT and RUMSEY, JJ., dissented.

APPEAL by the defendant, The Mayor, Aldermen and Commonalty of the City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of December, 1897, upon the verdict of a jury for $1,000, and also from an order entered in said clerk's office on the 13th day of December, 1897, denying the defendant's motion for a new trial made upon the minutes.

*Theodore Connoly,* for the appellant.

*George W. Wingate,* for the respondent.

Ingraham, J. :

The plaintiff sustained an injury from a fall on the northerly side of One Hundred and Forty-fifth street, from thirty-five to forty-five feet east of the corner of Amsterdam avenue and One Hundred and Forty-fifth street, on February 2, 1895 ; and to recover for the damages sustained by that fall he has brought this action against the city of New York. The locality in question is largely unimproved. The northeast corner of One Hundred and Forty-fifth street and Amsterdam avenue, extending 100 feet upon One Hundred and Forty-fifth street, was vacant property, only occupied by a small shanty on the corner. The sidewalk was not flagged over its entire width, there being a strip of flagging in the middle of the sidewalk about four feet wide, with dirt on each side. There was some evidence that these flags were not entirely level, but the recovery was not based upon any insufficiency in the flagging, and the learned trial judge expressly charged the jury that there was no evidence that the sidewalk upon which the plaintiff fell was improperly constructed. The right of the plaintiff to recover must, therefore, depend upon the fact that the defendant had been negligent in allowing the sidewalk to become dangerous by reason of an accumulation of ice and snow thereupon, and that by reason of such negligence the plaintiff sustained the injury. While the plaintiff testified that the snow upon this sidewalk had not been removed during the winter, the person who occupied the shanty as an express office upon the property in question testified that his men cleaned the walk after every snow storm and kept it in as good condition as it could be kept; that the snow and ice were taken off if possible, but, if ice on it had become hard, ashes were put upon it. The police officer upon this post was called by the plaintiff and testified that people traveling over the snow upon this sidewalk trod it down so that it became hard, rough and uneven ; that the expressman who occupied the shanty on the corner used to clean a pathway along these flags 100 feet in length, and that on the day of the accident there were ice and snow upon the sidewalk where the people had trampled it while passing over it. It would appear from the evidence that

on the morning of this accident there was upon this strip of flagging in the middle of the sidewalk more or less ice which had been caused by the trampling down of snow which had subsequently frozen, and that this condition of the sidewalk had continued for some time, probably some weeks, before the accident. The plaintiff was in the habit of using this sidewalk daily and was aware of its condition at the time. It was also proved that, during the month of January, snow fell on several days, and that, as is usual in winter weather in this latitude, there were days of frost, alternating with days on which the temperature was above freezing, there having been several days of warm weather prior to January twenty-seventh; and that on that day all the snow and ice had disappeared. On the twenty-eighth of January it commenced snowing at nine o'clock in the evening and continued until the next day, when three and one-half inches of snow had fallen. On February first, the day before the accident, the temperature was quite high, being as high as thirty-nine or forty degrees, and it was a clear, bright day. This temperature was sufficient to melt snow and ice and produce a thaw; but on the night of February first the temperature fell to twenty-five degrees, and early in the morning, about half-past six, it commenced to snow, and continued snowing until half-past two, during which time between two and four inches of snow fell.

On the morning of the second of February the plaintiff passed over this sidewalk and saw Officer Kelly on the corner and asked him how it was that there was snow and ice on the sidewalk. Officer Kelly then stopped an ash cart and put ashes on this sidewalk. Subsequently, in the afternoon and after the snow had ceased, the plaintiff returned on the sidewalk, and when he was about thirty-five to forty-five feet from the corner of Amsterdam avenue, slipped and fell, which caused a fracture of the hip joint. The plaintiff testified that he slipped on the snow and fell on the top of this ice; that he did not slip on slush; that as he fell he swept the snow off the ice and saw solid ice underneath; that the ice under the snow was smooth ice; that when he looked back he saw the ice which had been covered by the snow; that the place at which he slipped was smooth and even; that he did not come in contact with any portion of the flagstone, but that the flagstone was covered with ice, and the ice was covered with snow. As to the condi-

tion of the ice upon these flagstones prior to the first of February, it was undisputed that that ice was the result of snow which had fallen on the sidewalk and had been walked over and pressed down, and, subsequently, either from rain or the melting of the snow and freezing, had become ice. It was, as described by one witness, " hobbly — not smooth exactly ; it had been snow ; there had been times when there were two or three inches, I should judge, of ice ; there was snow outside of where it had been trampled down, and this had frozen and become ice ; there was a time when it was quite a deep path in the center, very irregular ; the snow had been trampled irregularly." It was undisputed that the snow upon the sidewalk prior to February first was thus rough and uneven. The first of February was a warm day, during which snow and ice would melt quite rapidly, succeeded by a cold day on the second of February. The result of this would be that the snow upon the sidewalk, which was not flagged and had not been cleaned, would melt and some water would be apt to flow upon the flagstones, and the snow that had been trampled down upon the sidewalk would melt, and thus water from the adjoining snow, and from the melted ice upon the sidewalk itself, would be apt to freeze at night, making clear, smooth ice. On the morning of the second of February it commenced to snow, and continued until a short time before the plaintiff was injured, the evidence being that between three and four inches of snow fell. It was upon this smooth ice, with the snow on top of it, that the plaintiff's own testimony shows that he fell. The court expressly charged the jury that if they believed the plaintiff's testimony that the ice upon which he fell was smooth and even, their verdict must be for the defendant. Yet this testimony of the plaintiff's was the only testimony in the case as to where the plaintiff fell and as to the condition of the sidewalk at this particular place. He swore that he slipped upon the snow, and that he noticed that the ice underneath the snow at the place where he fell was smooth and even ; and there was absolutely no testimony to show that the fall was caused by anything but the slipping upon the snow which covered smooth and even ice. The defendant is sought to be held liable in this action as a municipal corporation for negligence in allowing this street to become in an unsafe condition by reason of the accumulation of ice and snow. There was nothing to make it

the duty of the city to see that this whole sidewalk was clean as long as a reasonably safe space was made for pedestrians to use it, considering the surrounding locality and the use to which it was put. The premises were in a comparatively unimproved portion of the city, and the sidewalk itself was in front of vacant property. To entitle the plaintiff to recover he must show that the ice or snow which caused the injury had been allowed by the city to accumulate so as to render the walk unsafe, and thus, the city's negligence was the sole cause of the injury. It has been well settled in this State that a municipal corporation is not liable because ice and snow form upon a sidewalk and a person sustains injury therefrom. Something more than that is necessary. The fact that in this climate in winter, where days of warm and thawing weather alternate with days of frost, and where ice or snow is changed to slush or water, and then frozen into ice, it would be imposing upon the municipal corporation an impossible task to require them to remove such ice and snow from every one of the eight millions of square yards of sidewalks in the city of New York. Such a task would be plainly impossible; and to hold the city of New York liable for an injury occasioned by the accumulation of ice and snow upon a sidewalk under such circumstances, would make it an insurer of all persons using the streets. What the plaintiff must prove is that the municipal corporation neglected a duty that it owed to him in seeing that this sidewalk was clear and free from ice and snow on the day in question. The evidence as to the weather the day before the accident, and the evidence that there was snow upon the adjoining premises during the day when the weather was so warm that snow and ice would rapidly melt, followed by freezing on the day of the accident, and then by a snow storm, would certainly account for the condition of the smooth ice upon this sidewalk which was covered with the snow upon which the plaintiff slipped. There is not the slightest evidence to show that this old ice which had accumulated had anything to do with causing this accident.

The facts in this case are not unlike those in the case of *Taylor* v. *City of Yonkers* (105 N. Y. 206), and what the court there says would apply to the case now under consideration: "Another and different emergency sometimes occurs, and was referred to in the charge to the jury. When the streets have been wholly or partially

O'KEEFFE *v.* THE MAYOR. 529

A pp. Div.] First Department, May Term, 1898.

cleaned, it often happens that a fall of rain or the melting of adjoining snow is suddenly followed by severe cold, which covers everything with a film or layer of ice and makes the walks slippery and dangerous. This frozen surface it is practically impossible to remove until a thaw comes which remedies the evil. The municipality is not negligent for awaiting that result. It may and should require householders, when the danger is great, to sprinkle upon the surface ashes or sand or the like, as a measure of prudence and precaution, but is not responsible for their omission. * * * The emergency is one which is common to every street in the village or city, and which the corporation is powerless to combat. Usually it lasts but a few days, and the corporate authorities may await without negligence a change of temperature which will remove the danger." The court then commented upon the fact that the sidewalk along the street in question passed an unoccupied lot, and that before the accident the snowfall had been heavy and had been trampled down by travel, and by freezing and thawing had been converted into ice. " On the night preceding, rain fell which washed the sand from the ice, and then froze, covering everything with a new surface, and making the whole city slippery and dangerous for travel. * * * He stepped on the new ice surface just formed, and for the existence of which the city was in no respect responsible. Had that been the whole of the case a recovery would have been impossible." The court then discusses the question as to whether or not, there being a concurrent cause for which the defendant is responsible, a recovery can be sustained, and after examining the authorities says : " We have already stated the rule to be in this state that the defect, even when a concurring cause, must be such that without its operation the accident would not have happened. Where the defect is the sole explanation of the injury, there is no difficulty, but where there is also another, for which no one is responsible, we have held that ' the plaintiff must fail if his evidence does not show that the damage was produced by the former cause.' * * * And we added that he must fail also if it is just as probable that the injury came from one cause as the other, because he is bound to make out his case by a preponderance of evidence, and the jury must not be left to a mere conjecture or to act upon a bare possibility. In this case that rule

was violated.  The plaintiff slipped upon the ice.  That by itself was a sufficient, certain and operating cause of the fall.  No other explanation is needed to account for what happened."  The court continued : " I am quite willing to hold cities and villages to a reasonable performance of duty, but I am not willing to make them practically insurers by founding their liability upon mere possibilities."

The rule established in this case is further emphasized by the case of *Harrington* v. *City of Buffalo* (121 N. Y. 149).  In that case the court says : " The evidence established the fact that for four days previous to the accident the weather had been warm, causing the snow and ice on the walk to thaw and become soft, wet and sloppy.  On the night previous to the accident, the weather suddenly became colder and the snow and slush in the streets froze hard, forming ice and leaving foot-prints made during the previous sloppy weather, plainly visible in the frozen deposit.  In some places the owners of property adjoining the walk had cleaned off the snow, but at the place of the accident it had not for some weeks been entirely removed.  Much of the snow falling during that time had passed off through the natural effect of the elements upon it, but the portion referred to was what remained of a much larger accumulation. The walk, as thus shown, presented no unusual appearance for cities in our uncertain and inclement climate, and caused no more objectionable obstacle to safe passage than frequently exists in cities and villages during the cold season.  Whatever might have been its condition, so far as danger was to be apprehended, it arose solely from its frozen and slippery condition, and that, as we have seen, was caused by the freezing of the night before the accident.  The danger arising from the slipperiness of ice or snow lying in the streets is one which is familiar to everybody residing in our climate, and which every one is exposed to who has occasion to traverse the streets of cities and villages in the winter season.  Accidents occurring from such causes are chargeable solely to the persons injured, unless it can be shown that the cause thereof has been occasioned, aggravated or negligently permitted by the act of some third party charged with the duty of obviating or removing it.  *  *  *  The duty resting upon municipal corporations to remove accumulations of ice and snow as it falls from time to time upon their streets is a qualified one, and becomes

imperative only when dangerous formations or obstacles have been created and notice of their existence has been received by the corporation." In the case of *Ayres* v. *The Village of Hammondsport* (130 N. Y. 665) it seems that the plaintiff fell upon new ice formed the night before over an old accumulation of ice and snow upon a sidewalk in one of the defendant's streets, which had been negligently constructed. It was held, in an action to recover damages, that in the absence of evidence showing that the slope of the walk was a concurring cause of the fall, without which it would not have happened, the plaintiff was not entitled to recover. It seems to me what was said in these cases applies to the case now under consideration. The weather before the end of February had been warm, but had turned cold on the night of the first, followed by snow. The plaintiff expressly says that he slipped upon snow, and that that snow covered smooth ice. There is not a particle of evidence to show that the old ice which had accumulated upon the sidewalk was dangerous, or that the condition that existed before this fall of snow was anything more than a condition that is constantly experienced in winter in this climate, and was, as was said in *Harrington* v. *City of Buffalo* (*supra*), "one which is familiar to everybody residing in our climate, and which every one is exposed to who has occasion to traverse the streets of cities and villages in the winter season. Accidents occurring from such causes are chargeable solely to the persons injured, unless it can be shown that the cause thereof has been occasioned, aggravated or negligently permitted by the act of some third party charged with the duty of obviating or removing it. * * * The duty resting upon municipal corporations to remove accumulations of ice and snow as it falls from time to time upon their streets is a qualified one, and becomes imperative only when dangerous formations or obstacles have been created and notice of their existence has been received by the corporation." The old ice upon this sidewalk was, as before stated, rough; had been covered with ashes on the morning before the accident, and nothing exists to show that it was dangerous, as it had existed prior to the first of February. If new, smooth ice had formed it must have formed after the thawing on the first. For that, it is clear, the defendants were not responsible; and whether the plaintiff slipped upon that new ice or upon the snow, as he says he did, the accident was the result, not of the

neglect of the defendants, but of the ice and snow which had formed or fallen upon this sidewalk during the night before the accident, and for that the defendants were not responsible. There is absolutely nothing to show that the old ice or trampled snow which had remained upon this sidewalk for some time was dangerous, or caused the dangerous condition of the street. No accident is shown to have occurred before in this street, and nothing appears to show that before the second day of February the condition which the city allowed to exist was such that any one using ordinary care would be in any danger. We have then the thaw followed by frost and the snow storm. That this combination created a condition which caused the plaintiff to fall is the only logical conclusion than can be drawn from the evidence, and for that the city was not responsible.

Upon the whole case, I do not think that the evidence justified a finding of the jury that the injury to the plaintiff was caused by any negligence of the defendant, or by a condition of the street made dangerous by the defendant's negligence, and for this reason the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concurred; BARRETT and RUMSEY, JJ., dissented.

RUMSEY, J. (dissenting):

On the 2d day of February, 1895, as the plaintiff was walking on the north sidewalk of One Hundred and Forty-fifth street, between Amsterdam and Convent avenues, he slipped and fell and received serious injuries. He brings this action to recover the damages which these injuries caused to him. He claims that the sidewalk at the place where he fell was dangerous because the flagging had been permitted to become rough and uneven and in an unsafe condition by reason of faulty construction and want of repair; and that the snow had been permitted to accumulate upon this rough and uneven sidewalk, and had been beaten down by the constant passage of footmen until it had become icy and slippery; and that this condition of affairs had existed for so long a time that it was the duty of the defendant's officials to know of it and remedy it, and that he fell upon the ice thus negligently permitted to accumulate. Upon the trial he had a verdict. After the verdict, a motion for a new trial

was made upon the judge's minutes, which was denied, and this appeal is taken from the judgment entered upon that verdict and from the order denying a new trial.

That the plaintiff slipped and fell at the place where he said he did and received serious injuries, although not admitted, was not seriously disputed; but the questions litigated were as to the condition of the sidewalk, and whether it had been in that condition so long that the defendants might have been charged with negligence. Upon these points it was not disputed that the flagstones upon the sidewalk had been displaced, and that the walk was rough and uneven on account of the lack of repair; and while this was not insisted upon, and was not permitted to be considered by the jury as the ground upon which a verdict should be rendered, yet, undoubtedly, that condition must be considered as likely to increase the dangers to passersby if the sidewalk was covered with ice and snow. It is easy to be understood that the inequality in the sidewalk would make the ice more dangerous, and, because of the accumulation of ice upon an uneven sidewalk, one passing upon it would be more apt to slip and fall than if the sidewalk had been kept in proper repair. While the sidewalk itself was not necessarily or probably a proximate cause of the slipping, yet the condition of the sidewalk was such as to increase the probability that anybody going over it, if the ice were permitted to accumulate there, would fall or be hurt. In that respect the case is like that of *Conklin* v. *City of Elmira* (11 App. Div. 402). The general rule as to the duty of municipal corporations, undoubtedly, is that they are required to use reasonable care to see that the highways are in a reasonably safe condition for those who have occasion to use them. When, however, the dangerous condition of the sidewalk is claimed to result from accumulations of ice and snow, the duty of the corporation is somewhat qualified. It becomes imperative upon the corporation to remove accumulations of ice and snow only when dangerous formations or obstacles have been created and notice of their existence has been received by the corporation, or sufficient time has elapsed to afford presumptive knowledge of their existence and opportunity to effect their removal. (*Harrington* v. *City of Buffalo*, 121 N. Y. 147.) This rule has been well settled in this State. In the application of this rule it has been held that the

mere fact that a sidewalk had been permitted to be incumbered with ice so that it was dangerous to passersby was not of itself a ground for charging the corporation with negligence. It is entitled, in the first place, to a reasonable time within which to cause the snow and ice to be removed. Whether the streets have been cleaned or not, it often happens that the fall of rain, or the melting of the snow, is suddenly followed by severe cold, which covers everything with a film of ice and makes the walks slippery and dangerous, and it is practically impossible to remove this frozen surface until a thaw comes which remedies the evil. Usually it cannot be held to be negligence under those circumstances for a corporation to await the change of temperature which shall remedy these conditions, and it is not chargeable with negligence for injuries which happen upon a sidewalk which has become dangerous because of such a sudden freezing. (*Taylor* v. *City of Yonkers,* 105 N. Y. 202.) Applying these rules to this case it will be seen that the plaintiff was bound to show by a fair preponderance of the evidence that, when his fall took place, the sidewalk was in a dangerous condition because of the ice which had been permitted to accumulate at that place, and which had remained for so long a time that it could be said that the corporation was guilty of negligence in not requiring it to be removed. The plaintiff's story was that on the second day of February he had occasion to walk over this place; that before that, as he had passed it, he noticed that the snow had been permitted to remain there, and had been trampled down until the surface of it had become icy and slippery; that he called the attention of a police officer on that beat to the fact, and that the policeman scattered some ashes upon it, but over how great a space or to what extent does not clearly appear. He says that at that time there was a surface of ice upon this rough flagging, and that the walk was slippery. The precise condition of the weather during the second of February is somewhat in doubt. The plaintiff said that it hailed early in the morning when he was coming home from his work, which was night work, and it is undisputed that several inches of snow fell during the day, but there is nothing to show that, at any time during the day, it had frozen or any ice had been added to the accumulation that already existed. Evidence of several witnesses besides the plaintiff was given to the effect that the snow had been permitted to accumulate during

the whole winter upon this walk; that it had rarely or never been removed, and that because of the accumulation of snow the walk had been, during all the winter, slippery and dangerous. There was, to be sure, testimony offered on the part of the defendant that the walk had been cleaned off and kept clean; but whether that was true or not was clearly a question for the jury, who would have been more than justified in finding that the story of the plaintiff's witnesses in regard to the condition of this walk was true.

The important question, however, was whether there was evidence from which the jury might have found that this accident happened because of the old ice that had been permitted to remain upon the walk, or because of a new accumulation of ice which took place on the second of February, which the defendant had not had an opportunity to remove, or of which it had not had notice. Starting with the proposition, which was clearly established, that the ice had been rarely removed from this walk, it was made to appear by several witnesses that for a considerable time before the second of February the walk had been slippery and in bad condition. It was not disputed that on several days the weather had been warm and the ice had thawed to some extent, and the weather observer testified that on the twenty-seventh of January there was no ice or snow anywhere in the city. But he testified further that the observation upon which he gave that testimony was confined to places where the ice was not trampled down and where nobody had passed. He did not pretend to say that upon every sidewalk where ice had been permitted to accumulate, the short period of warm weather which took place about the twenty-seventh of January, had melted away every such accumulation. On the contrary, the evidence of the plaintiff's witnesses was positive to the effect that the accumulation at this place had not been melted away, and the knowledge of the conditions warranted the jury in believing their testimony, because it is common knowledge that snow which has been thus trampled upon the sidewalk is hard to melt, and that several days of warm weather have the effect simply to soften the top of it, leaving it again to become icy and slippery whenever a few hours of cold shall occur. The jury might have found then that, on the twenty-seventh day of January and down to the second of February, there still remained on this sidewalk an accumulation of ice. It is said that it snowed

FIRST DEPARTMENT, MAY TERM, 1898. [Vol. 29.

on the second of February, and that, undoubtedly, is the case ; but the evidence was that the plaintiff fell, not because he slipped upon the newly-fallen snow, but that he slipped upon the ice which lay under it and which had been there for a considerable time. He says that he slipped and fell, and when he got up he saw that his body had brushed the snow off the ice and there was ice underneath. In that regard his testimony is corroborated by the evidence of Dunn that the snow began at sixty-thirty A. M. and ended at two-forty P. M. ; that two and two-tenths inches of snow fell, and that the lowest temperature on that day was twenty-five and the highest thirty-two, although at some time in the very warmest part of the day it went as high as thirty-five. But it is quite evident from this testimony that there was no time during the day when the old ice upon the sidewalk had thawed, and that the condition was that which is so often seen of a light fall of snow upon an icy sidewalk which, as every one knows, renders the sidewalk more dangerous than if no snow had fallen upon it at all. The jury might have found that this was the condition of affairs. In fact if they repudiated, as they might, the testimony of the witnesses for the defendant, who said in a general way that the sidewalk had been cleaned off, there was no conclusion to which they could have come, except that at the time the plaintiff fell there was an accumulation of slippery ice upon this sidewalk and over it a slight fall of snow, and that this ice had been permitted to accumulate for a considerable length of time. As to the condition of the ice there was some inconsistency in the testimony, to be sure. The plaintiff testified that, when he got up after falling, he looked at the place where he fell and saw that the snow had been brushed off and that the ice below was smooth. Other witnesses testified that the ice was not smooth exactly. One of them testified that he was familiar with the condition of affairs there ; that the ice was " hobbly," not smooth exactly ; it had been snow that had frozen and become ice, and other witnesses testified to substantially the same condition of affairs. The word " hobbly " is an unusual one, but the meaning of it is, rough like a road and not smooth. The jury might have found from this testimony that the ice was not smooth, even ice, but was somewhat rough. But if they had found that the ice was smooth and even, it would not by any means have exonerated the defendant for negligence in permitting

it to accumulate upon the sidewalk. There is no rule of law which relieves a municipal corporation from the charge of negligence for permitting an accumulation of ice upon the walk, because the ice is smooth, and only charges it with negligence if the ice shall have become rough. The danger exists because the sidewalk is slippery, and if the municipal corporation permits the ice to remain upon the walk after it should have removed it, it is liable because of the failure to remove it, and the fact that the ice is smooth and not rough and, therefore, more slippery, is all the more reason for charging it with negligence. It is quite true in this case that the judge told the jury that if they believed the testimony of O'Keeffe that the ice was smooth, the plaintiff was not entitled to recover. That instruction was one to which the defendants were not entitled, because it was not the law. Nevertheless, the jury were bound by it. But they were not bound by the testimony of O'Keeffe, and it was their duty upon all the testimony to conclude what was the condition of the ice, and the great preponderance of the testimony was, that the ice was not smooth but was rough and uneven, and the jury might have found, and did find, that it was that condition which caused the plaintiff to fall.

The case of *Taylor* v. *The City of Yonkers* (105 N. Y. 202) is not at all in point. In that case there was no doubt upon the evidence, and the court so held, that the immediate cause of the accident was new ice just formed upon a layer of old ice which had been so covered with sand as not to be unsafe. The ground of alleging liability in that case was, that the new ice was formed upon a slope. The court held that if the slope was one concurring cause of the fall, without which the accident would not have happened, the city was liable, but that there was nothing in the case which pointed to the slope as a concurrent cause, beyond the fact that it existed ; and so that, upon the testimony, the jury must have found that the only cause of the fall was the ice for which, under the circumstances, the city was not liable and, therefore, the plaintiff could not recover. This case, however, is entirely different. There is no claim that the fact that the sidewalk was out of repair was any cause whatever of the accident. It was entirely eliminated from the case by the charge of the court, and the jury could only find a verdict

for the plaintiff here upon the theory that there had been permitted to be an accumulation of ice which rendered the sidewalk dangerous, and that accumulation had continued so long that the city ought to have had it removed. There was evidence enough to warrant that finding, and we cannot reverse this judgment upon the ground that it was against the weight of the evidence, without intruding upon the dominion of the jury and throwing aside testimony which they were bound to consider and which was sufficient to establish the plaintiff's case.

As has been mentioned, the court charged the jury that if they believed Mr. O'Keeffe's statement that the ice upon which he fell was smooth and even their verdict must be for the defendant. That was not a correct statement of the law, but nevertheless the jury were bound by it, but they were not bound to believe Mr. O'Keeffe's statement, as we have said, because there was sufficient evidence in the case to prove that the ice upon this sidewalk was not smooth but was rough and uneven.

The only other question which requires examination is an objection to the admission of evidence. The injury to the plaintiff was a broken hip. He had stated without objection that his leg was stiff. He was then asked, " How is it with regard to walking ? " to which he answered that he walked quite lame. To this evidence an objection was taken upon the ground that there was no allegation of permanent injury or of special damage. The evidence was insisted upon as sufficient under the complaint, and the court, after considerable discussion, admitted it. It is quite true that the plaintiff in actions of this character cannot recover for permanent injury unless he has alleged it, or unless the injury which he does allege is such that necessarily it is permanent, but he is entitled to prove whatever he has alleged. In this case the plaintiff alleged that he fell, broke his hip and did great injury to his person so that he has suffered, and does still suffer, great pain and anguish, and was and is prevented from performing his daily labor and attending to his avocation. Under that allegation he was clearly entitled to show what his condition was down to the time of trial, and whatever was the natural and usual result of the injury which he had received. (*Ehrgott* v. *Mayor*, 96 N. Y. 264.) The fact that he was lame at the time when he was giving his testimony was clearly competent

under this complaint, and for that reason the court was not in error in admitting that testimony. Upon a careful examination of this case we are forced to the conclusion that the testimony presented by the plaintiff, if believed by the jury, clearly tended to establish negligence on the part of the municipal corporation in permitting the accumulation of ice and snow upon that walk for a long period of time and justified the conclusion of negligence which was reached.

Judgment and order must be affirmed, with costs.

BARRETT, J.:

I also think that this judgment should be affirmed.

Judgment reversed, new trial ordered, costs to appellant to abide event.