testifies that the fulminate inside of the cartridge might be exploded by friction produced by the hand rubbing over the cartridge to remove the sulphur, providing the plug was not tight, but if the plug was tight it could not happen; that it might be exploded by rubbing the finger nail over it if it was heated, or it might if there was a break in the shell and the fulminate was exposed. But it is quite evident that the natural method of explosion is by heat or concussion. The New International Encyclopedia says of fulminate of mercury:

"When moist it may be handled without much danger; but when dry it explodes with violence, if struck by a hard body or if heated."

Now the expert on cross-examination said that he had worked at this business, that he had never exploded fulminate of mercury by pouring sulphur into the shell, and that he had made the test over and over again. The operation of pouring the sulphur over the shell had been completed before the plaintiff took the cartridges from the filling girl. Therefore we may eliminate the heat, because, of course, she had to pick off the sulphur before she applied the paraffine.

There remains, then, but the theories of friction by the finger nail or concussion from throwing the cartridges down on the table where there were iron utensils and hard paraffine. Which is the more likely? The superintendent for the defendant, Clifton, testified that he examined the scene of the explosion, that there was a large hole blown in the top of the drip kettle, and that in his opinion as an expert the explosion was due to a blow on top of the hard paraffine, but that he knew nothing about this accident, save by examining the spot.

I have come to the conclusion that the verdict was against the weight of evidence to the extent that the appellate court cannot be satisfied with the judgment based upon it, and therefore, under the authority of McDonald v. Metropolitan St. Ry. Co., 167 N. Y. 66, 70, 60 N. E. 282, I think the judgment should be reversed, and that a new trial should be granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.

---

## ROENBECK v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

1. DAMAGES—PHYSICAL CONDITION—EVIDENCE—SUFFICIENCY.
    Evidence in an action for injury to a passenger while attempting to board a street car *held* sufficient to sustain a finding that his tubercular condition at the time of the trial was the proximate result of his fall.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 507.]

2. SAME—PLEADING—EVIDENCE.
    Under allegations in the complaint in a personal injury action that the plaintiff "was made sick, sore, lame, and disabled, has suffered and will suffer pain, and has been and will be confined to his house," he could show a tubercular condition resulting from the injury.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 441.]

3. NEW TRIAL—SURPRISE—PERSONAL INJURY ACTION.
    Defendant, in a personal injury action, is not entitled to a new trial on the ground of surprise because plaintiff was permitted to show a tuber-

cular condition resulting from the injury, under a general allegation that plaintiff was made sick, sore, lame, and disabled, etc., where defendant did not demand a bill of particulars, or move to make the complaint more definite and certain, and where plaintiff in opening his case stated fully what he proposed to prove, and it was not until the second day of the trial, and at the close of plaintiff's case, that a claim of surprise was raised in an objection made to a question; no request being made to withdraw a juror, and no claim of surprise to defendant's prejudice being made except by objection to questions asked.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, New Trial, §§ 190–194.]

**4. DAMAGES—PERSONAL INJURIES—RECOVERY NOT EXCESSIVE.**

$9,000 is not an excessive recovery for negligent personal injury resulting in pleurisy and tuberculosis of the lungs, where the injured person prior to his injury earned over $2,000 a year, though under certain conditions of living he may be cured in from one to three or four years.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 357–396.]

Appeal from Trial Term, Kings County.

Action by Herman Roenbeck against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

D. A. Marsh, for appellant.

Stephen C. Baldwin, for respondent.

RICH, J. The action is to recover damages for a personal injury sustained, as alleged, through the negligence of defendant's servants in the operation of one of its cars, which the plaintiff was endeavoring to board. The main contention presented by defendant's counsel is that plaintiff's tubercular condition, which developed subsequent to the accident, was not shown to be due to the accident, and that the trial court erred in admitting proof of this condition over defendant's objection and exception.

The record discloses that the plaintiff's wife died from consumption about one year before the accident. Prior to his exposure by contact to the infection of consumption, with which disease she was infected, the general condition of plaintiff's health had been good, and he was a strong, healthy man. He testifies that shortly after her death he began to run down, developed a cough, had night sweats, did not feel well, and lost several pounds in weight. About four months after the death of his wife his condition became such that he consulted Dr. Shepard, who had attended Mrs. Roenbeck during the latter part of her illness, who, knowing that she died with consumption, made a careful physical examination of plaintiff, and especially of his lungs, using a stethoscope in addition to the other means employed. He testifies that the only objective symptoms of an affection of the lungs that he found were moist râles in the upper part of one and a difficulty in respiration, which, considered with the plaintiff's statement to him that he had night sweats and a cough, and was losing flesh, caused him to suspect incipient phthisis, and he prescribed creosote and malt, which is the first remedy usually prescribed and used in incipient consump-

tion. Dr. Shepard treated the plaintiff about a month, during which period he saw and examined him three times. He was greatly improved on the occasion of his last visit, and his recovery had been such that it does not seem to have been necessary to continue treatment longer. Dr. Shepard testified that he acted on his judgment as a medical man that plaintiff had tuberculosis, and gave him creosote as a remedy; that he regarded his suspicion that incipient tuberculosis existed well founded, or he would not have given him a medicine like creosote. The plaintiff testified that after his treatment by Dr. Shepard he felt better in every way and his cough disappeared. About a month before the accident he had a bilious attack and called on Dr. De Waltoff, to whom he stated that his wife died of consumption the previous year, following which he developed a cough and consulted a physician, who gave him creosote; that the cough had disappeared, but he had been feeling sick to his stomach and suffered from headaches, and wanted to be examined. The doctor made a careful and thorough examination, and found everything normal except a coated tongue, indicating biliousness. He used a stethoscope, sounded his lungs by hammering the chest over them, took his temperature, gave him medicine for biliousness, and directed him to call again in about two weeks, at which time he made another equally careful examination. The biliousness had disappeared, and the doctor discovered nothing not normal. From that time to the time of the accident the plaintiff testifies that he was feeling perfectly well. He was injured by being thrown to the pavement, striking on his face, while attempting to board one of defendant's cars, bruising his knees and chest. The same Dr. De Waltoff, who had examined him first a month before and again two weeks before the accident, was called to the drug store to which plaintiff had been carried after being injured, where he dressed his wounds, after which plaintiff was taken home. About midnight he was again called, and found the plaintiff suffering from a chill and complaining of a pain in the chest over his right lung, for which condition he prescribed. He called again the next morning, when he found plaintiff's temperature 102 degrees, which denoted fever, and a pleuritic condition which the doctor described as "pleurisy with probably localized pneumonia in some spot of the lungs, but my diagnosis was pleurisy. The man had an acute attack of pleurisy." He spit blood, which on the first visit the doctor attributed to his broken teeth, but on this visit ascertained did not come from the condition of the teeth, and he decided that it came from the lungs. During the next two weeks plaintiff developed a hacking cough, and the physician resorted to creosote preparations. From this time the plaintiff gradually grew worse until, on September 25, 1906, when he applied for admission to a sanitarium in the Adirondacks, an examination by Dr. Miller, the examining physician, disclosed that he was suffering from tuberculosis affecting both lungs.

This evidence being in the case, the plaintiff called as an expert Dr. J. Sherman Wight, who, in response to a carefully prepared hypothetical question, stated that plaintiff's condition prior to his injury and at the times he was examined by Drs. Shepard and De Waltoff, established an arrested incipient tubercular invasion, with a latent focus of disease still residing in the chest; that the existence of incipient

tuberculosis was established by plaintiff's condition when examined by Dr. Shepard, and its arrest by his condition when examined just before the accident by Dr. De Waltoff, and that the effect of the blow received upon the chest when thrown to the pavement was to light up and start anew the latent tubercular condition, with the final result shown by the plaintiff in this respect at the time of the trial; that in the absence of such blow upon the chest, or some other active agency interfering to excite and start the latent tubercular condition, the plaintiff would have continued in his ordinary pursuits without exhibiting any symptoms of pulmonary or lung trouble.

It is not disputed that incipient consumption of the lungs may be arrested in its progress and remain dormant during a man's life, unless excited into activity by some active cause, nor that a blow upon the chest over a lung in which such disease has been arrested and lies dormant may excite and start such disease anew; but it is urged that no proof sufficient to warrant the assumption of the existence of incipient tuberculosis at the time of Dr. Shepard's examination, which it is insisted was included in the hypothetical question asked Dr. Wight, had been made by plaintiff, and for that reason the evidence sought of him as an expert was incompetent and his answers speculative. We do not concur with the learned counsel in this contention. A careful examination of the hypothetical question discloses no fact not warranted by the evidence. The terms "incipient tuberculosis" and "pneumonia" were carefully excluded, and the condition of the plaintiff, as testified to by himself and his physicians who examined him, was stated in their own language. Its assumptions were supported by the evidence, and the testimony of Dr. Wight based thereon was competent, and, considered with the other evidence in the case, sufficient to sustain the conclusion of the jury that the consumptive condition of plaintiff at the time of the trial was the proximate result of the blow on the chest, received when he was thrown from the car of the defendant, for the result of which the defendant was liable.

The complaint alleged that as the result of the injury the plaintiff "was made sick, sore, lame, and disabled, has suffered and will suffer pain, and has been and will be confined to his house." It is urged that under these allegations no notice was given to the defendant, nor was it made conversant with any claim made by plaintiff that he was suffering from consumption as a result of the injury; that such proof was inadmissible under the pleadings, and that its reception resulted in surprise, depriving the defendant of the opportunity of meeting it, as it had no witnesses in court for that purpose; and that such opportunity should be secured to the defendant by the granting of a new trial. The defendant did not demand a bill of particulars, or move to make the complaint more definite and certain. The trial occupied three days, on the first of which counsel for plaintiff in opening his case stated fully what he proposed to prove with reference to plaintiff's condition as the result of his injury. No claim of surprise was then made by counsel for the defendant. It was not until the second day, at the close of plaintiff's case, when his last witness, Dr. Wight, was on the stand, that this claim was pressed upon the attention of the court in an objection made to a question. No request was made for a

physical examination of the plaintiff. The evidence of plaintiff's consumptive condition was competent under the general allegations of the complaint. Ehrgott v. Mayor, 96 N. Y. 264, 48 Am. Rep. 622. It is only where the plaintiff has specifically alleged the injury received and its consequent results that the courts have held him limited to the allegations of his pleading in this respect. Rudomin v. Interurban Street R. Co., 111 App. Div. 548, 98 N. Y. Supp. 506. No request was made to withdraw a juror, nor was the claim that defendant was surprised by the evidence to its prejudice presented to the trial court in any manner other than by an objection to the questions asked, having for their purpose the reception of the evidence referred to. Under such circumstances the contention that a new trial should be directed upon this ground is without merit.

It is urged that under certain conditions of living plaintiff can be cured of the consumption with which he is now afflicted in from one to three or four years, and that the recovery of $9,000 is so excessive as to demand a new trial. It is undisputed that the average weekly earnings of the plaintiff prior to his injury were $40, or over $2,000 a year. In view of this fact, and of his physical condition as disclosed by the evidence, we do not regard the verdict as excessive.

The record discloses no prejudicial errors, and the judgment and order must be affirmed, with costs. All concur.