JULIUS GOMBERT, Respondent, *v.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY et al., Appellants.

Damages — elements of damages in action for personal injuries — evidence — proof of loss of profits from business inadmissible.

In actions to recover damages for personal injuries, it is the character of the business or occupation of the person injured and of the income derived therefrom that must determine the admissibility of evidence of profits or earnings.   If the asserted loss consists of profits which are essentially the uncertain and fluctuating increment of invested capital,   .

proof thereof is inadmissible no matter how small it may be; and, conversely, if the loss is due to the destruction or impairment of one's personal earning capacity, the evidence thereof is not to be excluded simply because it may be large.

A contractor, engaged in the business of constructing buildings, in which he buys material, employs labor, oversees the work, and looks for his returns to the difference between what he gets and what he expends in performing his contracts, is not one who depends upon his personal earnings, but upon the profits of his business, and in such case evidence of income or profits derived from plaintiff's business is incompetent.

In an action to recover for injuries received at a railroad crossing, defendant's gateman and his wife testified that, although at the time of the trial he was very deaf, the deafness came on him suddenly a little more than a month after the accident, and that previous to that time his hearing was good. *Held,* that the court having charged, on request of defendant's counsel, that there was no *direct* evidence that the gateman was not in complete possession of the faculty of hearing at the time of the accident, properly refused, under the circumstances, to charge that " there is no *indirect* evidence to the contrary," and it was properly left for the jury to decide whether the gateman's complete deafness within a month after the accident was consistent with an unimpaired sense of hearing at that time.

*Gombert* v. *N. Y. C. & H. R. R. R. Co.,* 123 App. Div. 913, reversed.

(Argued April 8, 1909; decided May 4, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 16, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Daniel J. Kenefick, Alfred L. Becker* and *Maurice C. Spratt* for appellants. The court erred in admitting testimony of the plaintiff's profits in the contracting and building business and in permitting the jury to consider the same in measuring the damages arising from loss of time and diminution of earning power. (*Masterton* v. *Vil. of Mt. Vernon,* 58 N. Y. 391; *Johnson* v. *M. Ry. Co.,* 52 Hun, 111; *Blate*

v. *T. A. R. R. Co.*, 29 App. Div. 388 ; *Kronold* v. *City of New York*, 186 N. Y. 40 ; *Weir* v. *U. Ry. Co.*, 188 N. Y. 416 ; *Pryor* v. *Met. St. Ry. Co.*, 85 Mo. App. 367 ; *Silsby* v. *Car Co.*, 95 Mich. 204 ; *Read* v. *B. H. Ry. Co.*, 32 App. Div. 503 ; *Hewlett* v. *B. H. Ry. Co.*, 63 App. Div. 423 ; *Jonas* v. *I. U. St. Ry. Co.*, 45 Misc. Rep. 579.) The refusal of the court to charge that there was no indirect testimony that the gateman was not in complete possession of his faculties of hearing at the time of the accident and the charge of the court in connection with such refusal was error. (*Johnson* v. *N. Y. C. & H. R. R. Co.*, 173 N. Y. 79.) ·

*Clarence M. Bushnell* and *Charles J. Knoell* for respondent. The court did not err in permitting the plaintiff to testify as to his earnings, nor in the charge on this question. (*Kronold* v. *City of New York*, 186 N. Y. 408 ; *Weir* v. *U. R. Co.*, 188 N. Y. 416 ; *Pill* v. *B. H. R. R. Co.*, 6 Misc. Rep. 267.) The court did not err in refusing to charge that there was no indirect testimony that the towerman was not in complete possession of the faculty of hearing at the time of the accident. (*Kavanagh* v. *Wilson*, 70 N. Y. 177 ; *Koehler* v. *Adler*, 78 N. Y. 277 ; *Van Gaasbeck* v. *Staples*, 85 App. Div. 271 ; *People* v. *Tuczkewitz*, 149 N. Y. 240 ; *Fox* v. *M. Ry. Co.*, 67 App. Div. 462 ; *Mackey* v. *Webb*, 25 N. Y. S. R. 308.)

WERNER, J.   In the city of North Tonawanda there is a highway known as Wheatfield street, which runs substantially east and west, and crosses at grade the tracks of the New York Central and Hudson River Railroad Company, which run practically north and south. The Lehigh Valley railroad uses these tracks in its traffic between Buffalo and Niagara Falls. On the 2d day of October, 1905, the plaintiff was driving across these tracks on Wheatfield street, and collided with a south-bound Lehigh Valley train. The crossing was equipped with gates operated by compressed air from a tower maintained by the New York Central Railroad

Company, which was in charge of a gateman employed by
that company. The plaintiff brought this action to recover
for the injuries sustained in that collision, and both of the
corporations above named were made parties defendant upon
the theory that the one had been negligent in the operation
of its gates and the supervision of its crossing, while the other
had been negligent in the operation of its train. For the
purposes of this appeal we may assume that the alleged neg-
ligence of the defendants and the plaintiff's alleged freedom
from contributory negligence presented questions of fact for
the jury. The plaintiff recovered a substantial verdict
against both of the defendants, and the judgment entered
upon it was affirmed at the Appellate Division by a divided
court. Both of the defendants have appealed to this court
upon two exceptions taken by them to rulings of the trial
court. We shall first consider the exception to the refusal
of the trial court to charge that there was "no indirect
testimony" that Kumm, the gateman, "was in complete pos-
session of his faculties of hearing at the time of this acci-
dent." The recital of a few additional facts will disclose
the bearing of this request. The defendants called as a
witness the gateman Kumm. He was so deaf that a speak-
ing tube had to be used for the purpose of making him hear
the questions of counsel. He testified that this deafness
came upon him all at once on the 10th day of November,
1905, which was a little more than a month after the accident
to the plaintiff, and that previous to the 10th day of Novem-
ber, 1905, his hearing had been good. His testimony in this
behalf was corroborated by that of his wife, which was to the
same effect. Upon this situation thus presented, counsel for
the defendants requested the trial court to charge " that the
evidence is that the gateman was in complete possession of
his faculties of hearing at the time of this accident." To this
the trial court assented by saying : " That is his evidence."
Counsel for the defendants then said, " Also his wife," to
which the court replied, " Surely. All the evidence on that
subject is to that effect." Defendants' counsel, not content

with that unequivocal statement, further pressed the matter by suggesting, " There is no evidence to the contrary," and to this the court responded, " No direct evidence." Thus the case stood when the defendants' counsel requested the court to charge that " there is no indirect testimony to the contrary." Thereupon the court replied, " I will not say that. In other words the testimony of the witness Kumm and his wife is for the jury to determine."

We think the exception to this statement and ruling was not well taken. The court had previously charged all that the defendants were fairly entitled to upon that subject. Counsel in their zeal then pursued the subject somewhat hypercritically and they really injected into the case the unnecessary colloquy as to " indirect testimony." Quite apart from this technical view of the matter, however, there was no error or impropriety in leaving it for the jury to decide whether the gateman's sudden and complete deafness within a month after the accident was consistent with his possession of an unimpaired sense of hearing at the time of the accident. Although he was not a party to the action he had testified to a fact which, if material to the issue, was so unusual in the natural course of events as to invite inquiry. The jury had the undoubted right to weigh the testimony of the witnesses in this behalf for the purpose of testing the truthfulness of the rest of the gateman's story. (*Elwood* v. *West. Un. Tel. Co.*, 45 N. Y. 549.)

There is another exception in the case, however, which presents a much more serious question. That is the exception taken to the ruling under which the court admitted evidence of the income, profit or earnings which the plaintiff had derived from his business during the three years preceding the accident. In the interrogatories of plaintiff's counsel, the plaintiff's revenue from this source was called " earnings," but that is mere nomenclature which cannot be permitted to determine the inquiry whether the plaintiff's income had in fact been of such a character as to make it a proper element of the damages which he claimed the right to recover. As bearing upon that branch

of the case, it appeared that for a number of years prior to
the accident the plaintiff had been a " building carpenter con-
tractor." He generally took entire contracts for certain
amounts, although sometimes he furnished only the labor, at
other times only the material, and again both material and labor.
The extent of his business was not disclosed, but it appeared
that he had a horse and wagon, and employed men. From
these facts the inference was clearly permissible that he must
have had invested in his business some capital with which to
carry out his contracts. The circumstance that he occasionally
did some work with his own hands simply emphasizes the fact
that his principal occupation seems to have consisted in fig-
uring on contracts, overseeing the work of his employees, and
making such arrangements for materials and labor as the
nature of his undertakings required. Upon these meagre
facts we are to determine whether the income of the plaintiff
for the three years preceding the accident falls within the
category of personal earnings, the loss of which it was per-
missible to prove as an element of the damages suffered by
him, or whether it must be classed, either wholly or substan-
tially, as uncertain business profits proceeding from invested
capital which may not be considered in the process of ascer-
taining his loss. The rule of law which governs this phase
of actions of this character has long been settled as an abstract
legal proposition but, like many other legal rules, it sometimes
encounters serious difficulties in the course of its application
to particular facts. There are cases in which the facts are so
definite and unequivocal as to necessarily relegate them to
either one or the other of the two extremes of the rule.
Between these extremes we find every degree and variety of
fact and circumstance to which the rule must be applied,
and occasionally these are so near the shadowy border
line as to present troublesome questions. A few citations
will serve as illustrations. In *Masterton* v. *Village of
Mt. Vernon* (58 N. Y. 391, 396) the plaintiff was permitted to
testify to his profits, year by year, in the business of buy-
ing and selling teas, in which the plaintiff had attended

to the buying, which required great skill. The business had been extensive and had fallen off considerably after the injury to the plaintiff. There it was held to be error to have received evidence of the past profits of the plaintiff, because they were necessarily uncertain and fluctuating, and in stating that conclusion this court said: "The plaintiff had the right to prove the business in which he was engaged, its extent, and the particular part transacted by him, and, if he could, the compensation usually paid to persons doing such business for others. These are circumstances the jury have a right to consider in fixing the value of his time. But they ought not to be permitted to speculate as to the uncertain profits of commercial ventures, in which the plaintiff, if uninjured, would have been engaged." This excerpt from the opinion in that case clearly discloses the reason of the rule. It is simply an adaptation to a special class of cases of that general rule of damages under which, at common law, the party injured may recover for any loss that is definitely fixed or is capable of ascertainment with reasonable certainty. The later decisions upon the subject were reviewed by this court in the comparatively recent case of *Kronold* v. *City of New York* (186 N. Y. 40, 44). There the plaintiff was engaged in selling Swiss embroideries, for which he took orders from sample designs or from drawings. He maintained an office, but its equipment and the expense of keeping it were so insignificant as compared with the amount which he earned as the result of personal canvassing and solicitation that it was held to have been error to have excluded proof of his earnings previous to the personal injury upon which he based his action. In that case some of the earlier decisions were reviewed, and these clearly demonstrate that when a claim for damages arising out of personal injuries is based upon the destruction or impairment of one's ability to perform labor or render service which is essentially and fundamentally personal in character, evidence may be given as to the nature and extent of the loss. This rule has been applied to lawyers, physicians, dentists, teachers, midwives, gaugers, pilots, book

agents and other professional or semi-professional occupations in which the element of personal earnings has been held to predominate over a small and purely incidental investment of capital. (*Kronold* v. *City of New York, supra; Ehrgott* v. *Mayor, etc., of N. Y.,* 96 N. Y. 264; *Simonin* v. *N. Y., L. E. & W. R. R. Co.,* 36 Hun, 214; *Nash* v. *Sharpe,* 19 Hun, 365; *Lynch* v. *Brooklyn City R. R. Co.,* 123 N. Y. 657; *Waldie* v. *Brooklyn Heights R. R. Co.,* 78 App. Div. 557.)

The latest case in which this court has had occasion to apply this rule is that of *Weir* v. *Union Ry. Co.* (188 N. Y. 416). That case may be fairly said to be the antithesis of the *Kronold* case, for it furnishes a very pointed illustration of the opposite extreme of the rule. There the plaintiff had rented a small place in which he established an oyster stand and lunch room. The supplies purchased and sold by the plaintiff varied in amount to such an extent that occasional changes had to be made in the number of persons employed as waiters and assistants. Sometimes there were two or three, and at other times only one. The plaintiff's income consisted of the difference between the gross receipts and the running expenses of the establishment, and it fluctuated from week to week. There the trial court received evidence of the plaintiff's weekly profits, and the ruling was approved by the Appellate Division. When the case reached this court, however, the judgment was reversed upon the ground that the evidence was incompetent. That case is strikingly apposite to the discussion here, because it clearly shows that profits are not earnings simply because a business is very small, any more than earnings are necessarily to be considered as profits because they happen to be large. In other words, it is the character of the business or occupation and of the income derived therefrom that must determine the admissibility of such evidence in this class of actions. If the asserted loss consists of profits which are essentially the uncertain and fluctuating increment of invested capital, proof thereof is inadmissible no matter how small it may be; and, conversely, if the loss is due to the

destruction or impairment of one's personal earning capacity the evidence thereof is not to be excluded simply because it may be large.

In the light of these distinctions the case at bar is easily classified. We think the evidence of the plaintiff's income from his business for the three years preceding the accident in which he suffered his injuries was incompetent because it related to profits depending in considerable measure upon capital invested in business, as distinguished from personal earnings. We have said that the evidence upon this subject was somewhat meagre, and so it was. That is, however, either the fault or the misfortune of the plaintiff. If there was in existence any further evidence in addition to that adduced which might have tended to show that the plaintiff's occupation was such as to place his loss of income in the category of personal earnings, it was in the plaintiff's possession and he should have produced it. If there was no such additional evidence he must abide by the usual and necessary inference that a contractor, engaged in the business of constructing buildings, in which he buys material, employs labor, oversees the work, and looks for his returns to the difference between what he gets and what he expends in performing his contracts, is not one who depends upon his personal earnings but upon the profits of his business. In either event the defendants are entitled to a new trial.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.